[No. C061980. Third Dist. Aug. 24, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD DEAN JEHA, Defendant and Appellant.

## COUNSEL

George C. Harris, Melissa Jones and Maya Hoffman, under appointments by the Court of Appeal, for Defendant and Appellant.

C. Athena Roussos; Gibson Appellate Services and Jennifer Gibson for Prison Law Office as Amicus Curiae on behalf of Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Stephen G. Herndon and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—In *People v. Hofsheier* (2006) 37 Cal.4th 1185 [39 Cal.Rptr.3d 821, 129 P.3d 29] (*Hofsheier*), the California Supreme Court held that mandatory lifetime sex offender registration for defendants convicted of nonforcible oral copulation with 16- or 17-year-old minors (Pen. Code, § 288a)[1] violated state and federal equal protection guarantees.

In this case, defendant Ronald Dean Jeha urges us to extend the reasoning of *Hofsheier* to conclude that mandatory lifetime sex offender registration for conviction of sexual penetration by foreign object on an unconscious person (§ 289, subd. (d)) violates his equal protection rights. Defendant also attacks the registration requirement on grounds that it violates substantive due process under the United States and California Constitutions. We reject his contentions and affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

In January 2009, defendant pled no contest to sexual penetration by foreign object on an unconscious person (§ 289, subd. (d)). The trial court subsequently placed defendant on probation for a period of four years, ordered him to serve 180 days in jail, and required him to complete 200 hours of community service. The court denied defendant's motion to bar the mandatory sex registration requirement imposed by section 290.

Since defendant pled no contest, we draw on the facts as stated in the probation report. The report recounts that an unidentified motorist in Chico saw a shirtless Caucasian man with his pants down at 11:15 p.m. on October 23, 2008. The man was attempting to hold onto a woman, who seemed to be trying to stand up or walk away. The woman, whose jeans and underwear were pulled down, appeared to be very intoxicated.

When the motorist looked back a few moments later, she saw that the woman had fallen down. The man pulled up his pants before attempting to pick the woman up. The man also attempted to pull up the woman's pants and underwear. However, the woman fell down again. The motorist then saw the man lift the woman up beneath her underarms and drag her across a preschool parking lot and into the bushes. After losing sight of the woman, the motorist called the police.

When a police officer arrived, he found the woman lying unconscious and naked from the waist down. Her hair and clothing were disheveled, and she

---

[1] Undesignated statutory references are to the Penal Code.

had red and watery eyes. She appeared to be extremely intoxicated and the officer had difficulty in getting her to respond to his questions.

The woman denied having any physical injuries or having had sexual intercourse with anyone. She was unable to explain her state of undress. The woman said that she had been with her "girls" and did not recall interacting with any men. She was transported to a nearby medical facility for evaluation and treatment.

Hospital staff found that the woman had some bleeding and swelling near her vagina and injury to her anal area. The staff conducted a sexual assault forensic examination on the woman, and found that she had debris in her hair, clothing, and vaginal area. She had abrasions on her left knee, near her vaginal opening, and around her anus. A staff member reported that the abrasions in her genital area were consistent with penetration.

A police investigation determined that one of the woman's friends had received a call from an unfamiliar number at 10:40 p.m. The caller identified himself as "Ronnie" and told the woman's friend that the woman was intoxicated and needed a ride. The friend asked where the woman was located, and Ronnie said the woman was near a 7-Eleven store on West 3d and Oak Streets. The friend requested that Ronnie stay with the woman until the friend could pick her up.

Eight minutes later, the friend arrived but could not locate the woman or Ronnie. The friend telephoned Ronnie and asked whether the woman was still with him. Ronnie hung up on her. The friend drove around the area to search for the woman and dialed Ronnie's phone number seven more times, all to no avail. The friend informed the woman's sister, who sent a text message to Ronnie's cell phone at 11:08 p.m. to inquire about her sister's whereabouts.

At 11:27 p.m., the woman's sister received a text message from Ronnie's cell phone that read, "She's fucked I left her." When the sister asked about the location, she received the response: "Like 3rd and Oak." The sister then asked about the woman's well-being and received a text message stating: "She was hammed I just ignored hes [sic]."

The next day, the investigating officer met with the woman and her parents at the Chico Police Department. The woman said that she had consumed alcohol with friends before going to a party at another friend's residence. The woman was unable to remember anything that transpired after leaving the party and before waking up in the hospital. She denied engaging in sexual intercourse with anyone.

At the request of the officer, the woman made a pretext telephone call to Ronnie's cell phone. A man, later identified as defendant, answered the phone and identified himself as Ronnie. She identified herself as the woman from the previous night and thanked him for helping her. She asked whether anyone was with him when he contacted her. Defendant replied that he and his friends found her sitting on a curb and extremely intoxicated. Defendant refused to identify his friends and denied calling the woman's friend. The woman replied that she wanted to call his friend to thank him, but defendant replied by asking her what happened. She explained that she woke up with genital soreness and was uncertain about what had happened. Defendant responded, "Nothing like that happened (sexual incident)." When the woman continued to tell him about her soreness, he responded: "Sorry, it wasn't me. I mean I'm sorry that something like that happened, if that's what happened, but I don't know."

The woman then asked defendant whether they had ever met before, and he replied that he did not know. Defendant denied that he had called her friend but admitted that he had been intoxicated. She asked whether he was sure that they had not had sexual relations, and he answered that he was 100 percent certain and offered to provide a DNA sample as proof. The woman informed defendant that the person who had called her friend for assistance had identified himself as Ronnie. Defendant conceded that he must have been the caller but explained that he had been intoxicated. The investigating officer then instructed the woman to end the pretext call.

The investigating officer later interviewed defendant. Defendant explained that he had been intoxicated during the incident. He stated that he and his friends found the victim lying on the ground, and they decided to help her. Defendant struck up a conversation with the woman, and he began "smooth talking" her as they headed toward her residence. Defendant and the woman were holding hands and kissing as they walked along and discussed "hooking up" with each other. When they arrived at West 1st and Oak Streets, "it became 'heavier' "—by which defendant meant that the woman removed his shirt. When they neared the preschool, the victim's pants had come off and she was trying to remove his pants too. They moved behind a dumpster and resumed kissing. Defendant suggested that they go to his apartment where he had a condom.

Defendant denied having sexual intercourse with the victim. He stated that he pulled up his pants and fled when he saw a police vehicle. When the investigating officer confronted defendant with the evidence of the woman's injuries to her genital area, defendant acknowledged that he may have digitally penetrated her vagina for several seconds. Defendant adamantly denied inserting anything into her anus, stating: "That wasn't me. I don't

cross that line ever." Defendant stated that the woman responded to him by kissing him during the incident. He could not recall whether she said anything to him because they were both intoxicated at the time.

## DISCUSSION

## I

## Equal Protection Claim

Defendant argues that his federal and state equal protection rights are violated by the requirement that he register as a sex offender for the rest of his life when other defendants are not subject to mandatory registration for conviction of comparable sex offenses. We are not persuaded.

### A

Defendant committed the act of sexual penetration of an unconscious person within the meaning of section 289, subdivision (d), which provides in pertinent part: "Any person who commits an act of sexual penetration, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act or causing the act to be committed, shall be punished by imprisonment in the state prison for three, six, or eight years. As used in this subdivision, 'unconscious of the nature of the act' means incapable of resisting because the victim meets one of the following conditions: [¶] (1) Was unconscious or asleep. [¶] (2) Was not aware, knowing, perceiving, or cognizant that the act occurred."

For his conviction, defendant is subject to mandatory lifetime sex offender registration under section 290. Subdivision (b) of that section provides: "Every person described in subdivision (c), for the rest of his or her life while residing in California . . . shall be required to register" as a sex offender. Subdivision (c) contains an extensive list of Penal Code sections and subdivisions, including section 289, for which conviction requires mandatory lifetime sex offender registration.[2]

---

[2] Subdivision (c) of section 290 provides: "The following persons shall be required to register: [¶] Any person who, since July 1, 1944, has been or is hereafter convicted in any court in this state or in any federal or military court of a violation of Section 187 committed in the perpetration, or an attempt to perpetrate, rape or any act punishable under Section 286, 288, 288a, or 289, Section 207 or 209 committed with intent to violate Section 261, 286, 288, 288a, or 289, Section 220, except assault to commit mayhem, Section 243.4, paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261, paragraph (1) of subdivision (a) of Section 262 involving the use of force or violence for which the person is sentenced to the state prison, Section 264.1, 266, or 266c, subdivision (b) of Section 266h, subdivision (b) of Section 266i,

Not all sex offenses are subject to the mandatory lifetime registration requirement. Under section 290.006,[3] the trial court has discretion to impose a registration requirement for defendants convicted of sex offenses that include spousal rape on an unconscious or intoxicated victim (§ 262, subd. (a)(2), (3)),[4] spousal rape by use of threats to retaliate against the victim or others (§ 262, subd. (a)(4), (5)),[5] spousal rape by force or violence if the defendant is not sentenced to state prison for the offense (§§ 262, subd. (a)(1),[6] 290, subd. (c) [requiring mandatory registration for person convicted of § 262, subd. (a), when the offense was one "involving the use of force or violence for which the person is sentenced to the state prison"]). Defendant points out that sexual intercourse with a minor (§ 261.5)[7] and oral copulation with a minor (§ 288a, subd. (b)(1))[8] are also subject to discretionary imposition of a sex offender registration requirement. (See § 290, subd. (c); *Hofsheier, supra,* 37 Cal.4th at pp. 1200–1207.)

---

Section 266j, 267, 269, 285, 286, 288, 288a, 288.3, 288.4, 288.5, 288.7, 289, or 311.1, subdivision (b), (c), or (d) of Section 311.2, Section 311.3, 311.4, 311.10, 311.11, or 647.6, former Section 647a, subdivision (c) of Section 653f, subdivision 1 or 2 of Section 314, any offense involving lewd or lascivious conduct under Section 272, or any felony violation of Section 288.2; any statutory predecessor that includes all elements of one of the above-mentioned offenses; or any person who since that date has been or is hereafter convicted of the attempt or conspiracy to commit any of the above-mentioned offenses."

[3] Section 290.006 provides, in pertinent part: "Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification."

[4] Subdivision (a)(2) and (3) of section 262 define the offense as a rape "(2) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known, by the accused. [¶] (3) Where a person is at the time unconscious of the nature of the act, and this is known to the accused."

[5] Subdivision (a)(4) and (5) of section 262 define the offense as a rape "(4) Where the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person, and there is a reasonable possibility that the perpetrator will execute the threat. As used in this paragraph, 'threatening to retaliate' means a threat to kidnap or falsely imprison, or to inflict extreme pain, serious bodily injury, or death. [¶] (5) Where the act is accomplished against the victim's will by threatening to use the authority of a public official to incarcerate, arrest, or deport the victim or another, and the victim has a reasonable belief that the perpetrator is a public official."

[6] Subdivision (a)(1) of section 262 defines this offense as rape of a spouse "accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another."

[7] Subdivision (a) of section 261.5 provides: "Unlawful sexual intercourse is an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor. For the purposes of this section, a 'minor' is a person under the age of 18 years . . . ."

[8] Subdivision (b)(1) of section 288a provides that "any person who participates in an act of oral copulation with another person who is under 18 years of age shall be punished by imprisonment in the state prison, or in a county jail . . . ."

Defendant contends the disparate treatment of persons convicted of these sex offenses for which registration is not mandatory violates his right to equal protection of the law.

## B

██ The equal protection clause of Fourteenth Amendment to the United States Constitution declares: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." California's Constitution similarly states: "A person may not be . . . denied equal protection of the laws . . . ." (Cal. Const., art. I, § 7, subd. (a).) " ' "The equality guaranteed by the equal protection clauses of the federal and state Constitutions is equality under the same conditions, and among persons similarly situated. The Legislature may make reasonable classifications of persons and other activities, provided the classifications are based upon some legitimate object to be accomplished." ' " (*People v. Rhodes* (2005) 126 Cal.App.4th 1374, 1383 [24 Cal.Rptr.3d 834], quoting *People v. Spears* (1995) 40 Cal.App.4th 1683, 1687 [48 Cal.Rptr.2d 634].)

As the California Supreme Court recently explained, " ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." [Citation.]' " (*People v. McKee* (2010) 47 Cal.4th 1172, 1218–1219 [104 Cal.Rptr.3d 427, 223 P.3d 566], quoting *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].)

██ Being similarly situated with others who receive different treatment under the law does not necessarily mean that the challenged statute violates equal protection guarantees. Instead, a finding that a defendant is similarly situated requires us to determine whether the statutorily authorized difference in treatment withstands the appropriate level of scrutiny. If a statute neither implicates a fundamental right nor operates to the singular disadvantage of a suspect class, only a rational relationship to a legitimate state purpose is necessary to uphold the constitutional validity of the legislation. (*Kubik v. Scripps College* (1981) 118 Cal.App.3d 544, 552 [173 Cal.Rptr. 539]; *Niedle v. Workers' Comp. Appeals Bd.* (2001) 87 Cal.App.4th 283, 288–289 [104 Cal.Rptr.2d 534].)

Defendant argues that the sex offender registration requirement implicates his fundamental right to privacy. Thus, he asserts that we must employ strict scrutiny to review the statutory scheme at issue here. Defendant is mistaken.

 Only in limited instances have the courts held the right to privacy to constitute a fundamental right that warrants strict scrutiny of claimed infringement. These instances have been largely restricted to matters of marriage and procreation. (*San Antonio School District v. Rodriguez* (1973) 411 U.S. 1, 100 [36 L.Ed.2d 16, 93 S.Ct. 1278].) Other claims of infringement on privacy rights have been analyzed under the rational basis test. "Some constitutional restrictions, even though identified with the right to privacy, are deserving of less than strict scrutiny because of their minimal intrusion into a person's privacy." (*Miller v. Murphy* (1983) 143 Cal.App.3d 337, 343–344 [191 Cal.Rptr. 740].)

Restrictions on privacy following a criminal conviction have not been subjected to strict scrutiny by the courts. "As a convicted felon, defendant has a diminished expectation of privacy in his identity. (See, e.g., *People v. Johnson* (2006) 139 Cal.App.4th 1135, 1161–1164 [43 Cal.Rptr.3d 587].) 'By their commissions of a crime and subsequent convictions, persons such as appellant have forfeited any legitimate expectation of privacy in their identities.' " (*People v. McCray* (2006) 144 Cal.App.4th 258, 266 [50 Cal.Rptr.3d 343].)

 We reject the strict scrutiny standard in favor of the rational basis test that is appropriate for assessing most claims of infringement on equal protection rights. In *Hofsheier, supra,* 37 Cal.4th at page 1204, our Supreme Court applied the rational basis test in assessing the equal protection challenge that defendant urges us to follow in this case. The *Hofsheier* court noted that " ' " '[i]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge *if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.* [Citations.] Where there are "plausible reasons" for [the classification], "our inquiry is at an end." ' " ' " (*Hofsheier, supra,* 37 Cal.4th at pp. 1200–1201, quoting *Kasler v. Lockyer* (2000) 23 Cal.4th 472, 481–482 [97 Cal.Rptr.2d 334, 2 P.3d 581].) Accordingly, we adhere to the rational basis test employed by the *Hofsheier* court in its resolution of a similar equal protection challenge.

## C

In *Hofsheier,* the California Supreme Court found the mandatory lifetime sex offender registration requirement of section 290 unconstitutional as it applied to a defendant who had been convicted of oral copulation of a minor. (*Hofsheier, supra,* 37 Cal.4th at pp. 1192, 1194–1196; § 288a, subd. (b)(1).) The defendant in *Hofsheier* was a 22-year-old man who had engaged in "voluntary" oral copulation with a 16-year-old girl. (*Hofsheier, supra,* at

pp. 1192–1193.) In describing the minor's role as voluntary, the high court used "the term 'voluntary' in a special and restricted sense to indicate both that the minor victim willingly participated in the act and to the absence of various statutory aggravating circumstances: the perpetrator's use of 'force, violence, duress, menace or fear of immediate and unlawful bodily injury on the victim or another person' (§ 288a, subd. (c)(2)); the perpetrator's 'threatening to retaliate in the future against the victim or any other person' (§ 288a, subd. (c)(3)); and *the commission of the act while the victim is unconscious* (§ 288a, subd. (f)) *or intoxicated* (§ 288a, subd. (i))." (*Hofsheier, supra,* at p. 1193, fn. 2, italics added.)

The *Hofsheier* court found that the defendant in that case was similarly situated with persons convicted of voluntary sexual intercourse with a minor (§ 261.5). (*Hofsheier, supra,* 37 Cal.4th at pp. 1199–1200.) Had the defendant been convicted only of voluntary sexual intercourse with a minor, he would not have been subject to mandatory lifetime sex offender registration. On this point, the Supreme Court noted defense counsel's comment, " 'It's kind of ironic, because if he had actually had sexual intercourse with [the minor] and was charged and convicted of statutory rape, he would not have to register . . .' " as a sex offender. (*Id.* at p. 1193.) In such circumstance, the trial court would have had discretion to decide whether to require the defendant to register as a sex offender. (*Id.* at pp. 1195, 1207.) Thus, the defendant in *Hofsheier* met his burden of proving that "the statutory distinction in section 290 requiring mandatory lifetime registration of all persons who . . . were convicted of voluntary oral copulation with a minor of the age of 16 or 17, but not of someone convicted of voluntary sexual intercourse with a minor of the same age, violates the equal protection clauses of the federal and state Constitutions." (*Id.* at pp. 1201, 1207.)

Since the Supreme Court's decision in *Hofsheier,* several reported decisions of the Court of Appeal have sustained additional equal protection challenges to the mandatory lifetime registration requirements of section 290. As in *Hofsheier,* these cases involve consensual sex acts with minors. (*People v. Thompson* (2009) 177 Cal.App.4th 1424, 1427 [100 Cal.Rptr.3d 57] [equal protection violated by mandatory registration for defendant convicted of voluntary sexual intercourse and sodomy with a 17 year old]; *People v. Rancht* (2009) 173 Cal.App.4th 1369, 1371 [93 Cal.Rptr.3d 800] [equal protection denied by mandatory registration for conviction of voluntary sexual penetration of a 13 year old]; *People v. Luansing* (2009) 176 Cal.App.4th 676, 678 [97 Cal.Rptr.3d 836], disapproved on other grounds in *People v. Picklesimer* (2010) 48 Cal.4th 330, 338, fn. 4 [106 Cal.Rptr.3d 239, 226 P.3d 348] (*Picklesimer*) [equal protection violated by mandatory registration for defendant convicted of voluntary oral copulation of 16 year old]; *People v. Garcia* (2008) 161 Cal.App.4th 475, 481–482 [74 Cal.Rptr.3d 681], disapproved on other grounds in *Picklesimer, supra,* at p. 338, fn. 4 [equal

protection denied by mandatory registration for defendant convicted of voluntary oral copulation involving a 14- or 15-year-old victim when the perpetrator is more than 21 years of age]; *People v. Hernandez* (2008) 166 Cal.App.4th 641, 651 [83 Cal.Rptr.3d 29], disapproved on other grounds in *Picklesimer, supra,* at p. 338, fn. 4 [same].)

Other reported decisions have rejected equal protection challenges seeking to extend the holding of *Hofsheier.* (*People v. Kennedy* (2009) 180 Cal.App.4th 403, 409–410 [103 Cal.Rptr.3d 161] [equal protection not violated by mandatory registration requirement for defendant convicted of attempted distribution of harmful matter to a minor by the Internet]; *People v. Cavallaro* (2009) 178 Cal.App.4th 103, 115 [100 Cal.Rptr.3d 139] [equal protection not violated by mandatory registration for defendant convicted of lewd and lascivious acts on 14- or 15-year-old minor when the defendant was at least 10 years older]; *People v. Manchel* (2008) 163 Cal.App.4th 1108, 1115 [78 Cal.Rptr.3d 194], disapproved on other grounds in *Picklesimer, supra,* 48 Cal.4th at p. 338, fn. 4 [equal protection not violated by mandatory registration for defendant convicted of oral copulation with 16-year-old minor when the defendant was more than 10 years older]; *People v. Anderson* (2008) 168 Cal.App.4th 135 [85 Cal.Rptr.3d 262] [rejecting equal protection challenge by defendant who was convicted of lewd or lascivious act on a 14- or 15-year-old victim when the perpetrator was at least 10 years older].)

Defendant urges us to find him similarly situated with other defendants whose sex offenses involved consensual participants but whose status as minors rendered them unable to give legal consent. To this end, defendant seeks to portray the woman whom he digitally penetrated as a consensual participant. He asserts that "the victim, who was voluntarily intoxicated, engaged willingly in sexual contact with [defendant]." We reject defendant's characterization of the victim's participation as voluntary.

In extracting only his self-serving statements to the police, defendant fails to acknowledge that the victim—who was nearly fatally intoxicated[9]—never consented to sexual intercourse with defendant. They were strangers. Defendant was observed dragging the victim across a parking lot and into bushes. And the victim sustained abrasions consistent with sexual assault.

In *Hofsheier,* the court noted that it was "concerned here with the validity of the mandatory registration requirement for . . . *voluntary* acts of oral copulation when the victim is 16 or 17 years of age." (*Hofsheier, supra,* 37 Cal.4th at pp. 1194–1195, italics added.) A sex offense against an intoxicated

---

[9] The trial court noted that the victim's blood-alcohol level was sufficiently elevated that she could have "gone into a coma, vomited" or "she could have been dead."

or unconscious person is not one that involves a voluntary participant. (*Id.* at p. 1193.) The forcible nature of defendant's sex offense sets him apart from the defendants in *Hofsheier* and following cases in which an equal protection challenge to section 290 was sustained.

Defendant also argues that his crime should be compared to sex offenses against spouses for which the mandatory registration requirement does not apply. Defendant points out that conviction of spousal rape does not trigger mandatory registration even if the victim was prevented from resisting by intoxication. (§§ 262, subd. (a)(2), 290, subd. (c).) So too, no registration requirement exists for rape of a spouse who is unconscious. (§ 262, subd. (a)(2).) Spousal rape does not require mandatory registration unless the defendant is sent to prison—even if accomplished by force, fear, or duress. (§ 262, subd. (a)(1).) Defendant emphasizes that none of these offenses can be considered voluntary. (See *Hofsheier, supra,* 37 Cal.4th at p. 1193, fn. 2.)

We perceive a rational basis for the Legislature to distinguish between those who commit sex offenses against their spouses and those who commit their crimes against acquaintances and strangers. Whatever the merits of defendant's assertion that the "offenses are otherwise identical," the relationship between the perpetrator and the victim is not. As our Supreme Court recognized in *Hofsheier,* section 290 registration serves "to notify members of the public of the existence and location of sex offenders so they can take protective measures." (*Hofsheier, supra,* 37 Cal.4th at p. 1196.) This rationale serves a legitimate purpose in the case of sex offenders, such as defendant, who commit their crimes against strangers and acquaintances. However, sex offenses against spouses involve victims with preexisting and presumably significant relationships with the perpetrators. Since the spousal victim has a unique relationship with the perpetrator, the victim does not require public notice to become aware of the danger of repeated sexual assault.

" 'Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think.' " (*People v. Travis* (2006) 139 Cal.App.4th 1271, 1292 [44 Cal.Rptr.3d 177], quoting *Williamson v. Lee Optical Co.* (1955) 348 U.S. 483, 489 [99 L.Ed. 563, 75 S.Ct. 461].) The Legislature has the prerogative to require mandatory registration of sex offenders who commit their crimes against acquaintances and strangers even while allowing trial courts to exercise their discretion in the case of similar sex offenses against spouses.

Defendant fails to meet his burden to negate any rational basis for distinguishing between his offense and other offenses involving voluntary participants or spouses. (*Hofsheier, supra,* 37 Cal.4th at p. 1201.) Accordingly, defendant's equal protection challenge fails.

## II

### Substantive Due Process Claim

Defendant argues that mandatory lifetime sex offender registration under section 290 violates his federal and state rights to substantive due process by infringing on his fundamental right to privacy. We disagree.

### A

■ At the outset, the Attorney General argues that defendant forfeited his substantive due process claim for failure to raise it in the trial court. When a challenge to the constitutional validity of a statute is raised for the first time on appeal, we will generally exercise our discretion to consider the argument if it represents an important issue of public concern (or case of first impression) and involves only the application of legal principles to undisputed facts for which the People have not been deprived of a fair opportunity to develop facts to the contrary. (*In re Sheena K.* (2007) 40 Cal.4th 875, 887–888 & fn. 7 [55 Cal.Rptr.3d 716, 153 P.3d 282]; *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1323 [98 Cal.Rptr.3d 477].)

In this case, defendant actually challenged the sex offender registration requirement in the trial court on grounds that it violated the Fourteenth Amendment. Although he based his argument on the equal protection clause of the Fourteenth Amendment, we shall consider his substantive due process claim. Defendant's substantive due process argument does not invoke facts or legal standards different from those the trial court was asked to apply. (*People v. Partida* (2005) 37 Cal.4th 428, 435–436 [35 Cal.Rptr.3d 644, 122 P.3d 765].) " '[A]s a general matter, no useful purpose is served by declining to consider on appeal a claim that merely restates, under alternative legal principles, a claim otherwise identical to one that was properly preserved by a timely motion that called upon the trial court to consider the same facts and to apply a legal standard similar to that which would also determine the claim raised on appeal.' " (*Id.* at p. 436, quoting *People v. Yeoman* (2003) 31 Cal.4th 93, 117 [2 Cal.Rptr.3d 186, 72 P.3d 1166].) Accordingly, we exercise our discretion to consider defendant's substantive due process claim.

### B

Defendant's assertion of a substantive due process violation asks this court to give immutable constitutional status to the proposition that a convicted sex offender has a right to privacy that the Legislature may not infringe upon by enacting a sex offender registration requirement.

■ In evaluating defendant's argument, we heed the admonition that "[d]ue to the inherently subjective factors that define substantive due process rights and the lack of precise ' "guideposts for responsible decisionmaking in this unchartered area," ' courts are reluctant to expand the concept of substantive due process and 'therefore "exercise the utmost care whenever we are asked to break new ground in this field." ' (*Washington v. Glucksberg* (1997) 521 U.S. 702, 720 [138 L.Ed.2d 772, 117 S.Ct. 2258]; see also *Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 141 [29 Cal.Rptr.3d 553].)" (*People v. Travis, supra*, 139 Cal.App.4th 1271, 1293.)

To find a statute unconstitutional on substantive due process grounds, the statutory provision must appear to be unreasonable, arbitrary, or capricious so that it lacks any " ' "real and substantial relation to the object sought to be attained." [Citation.]' " (*People v. Hodges* (1999) 70 Cal.App.4th 1348, 1356 [83 Cal.Rptr.2d 619].) " 'In the exercise of its police power a Legislature does not violate due process so long as an enactment is procedurally fair and reasonably related to a proper legislative goal.' " (*Perkey v. Department of Motor Vehicles* (1986) 42 Cal.3d 185, 189 [228 Cal.Rptr. 169, 721 P.2d 50].)

## C

■ Defendant and amicus curiae, Prison Law Office, survey the negative consequences of the sex offender registration requirement and the attending difficulties that registrants encounter in seeking housing and employment. These concerns are legitimate, as the *Hofsheier* court recognized: "Although sex offender registration is not considered a form of punishment under the state or federal Constitution (*In re Alva* [(2004)] 33 Cal.4th [254,] 268 [14 Cal.Rptr.3d 811, 92 P.3d 311]; *People v. Castellanos* (1999) 21 Cal.4th 785, 796 [88 Cal.Rptr.2d 346, 982 P.2d 211] (lead opn. of George, C. J.)), it imposes a 'substantial' and 'onerous' burden (*People v. Castellanos, supra*, 21 Cal.4th 785, 796 (lead opn. of George, C. J.); see *In re Birch* (1973) 10 Cal.3d 314, 321–322 [110 Cal.Rptr. 212, 515 P.2d 12]). If, as in this case, a person is convicted of a felony [requiring mandatory sex offender registration], the California Department of Justice will furnish the registrant's name and ZIP code to inquiring members of the public. (§ 290.4, subd. (a).) When it becomes publicly known that a person is a registered sex offender, the person may be at risk of losing employment, and may have difficulty finding a place to live." (*Hofsheier, supra*, 37 Cal.4th at p. 1197.)

Even though the registration requirement may impose a heavy burden on those for whom registration is mandatory, the Legislature has the prerogative of "prescribing the consequences of convictions for various offenses," which is "distinctly and solely a legislative function." (*People v. Travis, supra*, 139 Cal.App.4th at p. 1292.)

 The requirement that sex offenders convicted of certain enumerated offenses be required to register with the state does not serve an arbitrary and unreasonable purpose. The United States Supreme Court—in considering an ex post facto challenge to Alaska's sex offender registration program—explained that sex offender registration "has a legitimate nonpunitive purpose of 'public safety, which is advanced by alerting the public to the risk of sex offenders in their communit[y].' [Citation.] Respondents concede, in turn, that 'this alternative purpose is valid, and rational.' [Citation.] They contend, however, that the Act lacks the necessary regulatory connection because it is not 'narrowly drawn to accomplish the stated purpose.' [Citation.] A statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance. The imprecision respondents rely upon does not suggest that the Act's nonpunitive purpose is a 'sham or mere pretext.' " (*Smith v. Doe* (2003) 538 U.S. 84, 102–103 [155 L.Ed.2d 164, 183, 123 S.Ct. 1140], quoting *Kansas v. Hendricks* (1997) 521 U.S. 346, 371 [138 L.Ed.2d 501, 117 S.Ct. 2072].)

California's sex offender registration requirement is regulatory and nonpunitive. (*Picklesimer, supra*, 48 Cal.4th 330, 344; *Hofsheier, supra*, 37 Cal.4th at p. 1196.) " ' " ' "The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' " ' [Citations.] In recent years, section 290 registration has acquired a second purpose: to notify members of the public of the existence and location of sex offenders so they can take protective measures. (See Stats. 1996, ch. 908, § 1, subd. (b), p. 5105.)" (*Hofsheier, supra*, at p. 1196.) These purposes are rational and within the domain of the Legislature to require of convicted sex offenders.

 As we explained in part IB, *ante*, defendants who have been convicted of crimes have greatly attenuated privacy rights—especially regarding their identities. Consequently, a postconviction registration requirement for enumerated sex offenses does not infringe on any rights "identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected by the Fourteenth Amendment." (*Washington v. Glucksberg, supra*, 521 U.S. at p. 727 [138 L.Ed.2d 772]; cf. also *Doe v. Tandeske* (9th Cir. 2004) 361 F.3d 594, 596–597 [rejecting substantive due process challenge to Alaska's sex offender registration statutes].)

Defendant's substantive due process rights under the federal and state constitutions are not violated by section 290's requirement that he register as a sex offender.

## DISPOSITION

The judgment is affirmed.

Raye, J., and Cantil-Sakauye, J., concurred.