Filed 8/30/13  P. v. Sanchez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ABEL SANCHEZ,<br><br>    Defendant and Appellant. | D062685<br><br><br>(Super. Ct. No. SCD236180) |

APPEAL from a judgment of the Superior Court of San Diego County,

Albert T. Harutunian, III, Judge.  Affirmed.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Sean M.

Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Abel Sanchez of sodomy of an intoxicated person, assault with

intent to commit rape or sodomy, burglary, and sexual battery.  He appeals contending

(1) insufficient evidence supported the sodomy conviction, (2) the court abused its discretion in admitting a statement made by his daughter to the victim, (3) the trial court erred in denying his motion for a new trial based on newly discovered evidence, and (4) imposition of mandatory sex offender registration on him for sexual battery violates his right to equal protection. We reject Sanchez's contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On Christmas Eve in 2010, Karen Sanchez, Abel's daughter, had a party at her apartment with Rosalinda L., Miguel Mendes, Abel and two other guests. While at the party, Rosalinda had six or more shots of tequila and became "very dizzy." She could not stand up on her own and was slurring her words. Around 4:00 a.m., Karen put Rosalinda to bed fully clothed and locked the door from the inside.

A few minutes later, Karen wanted to get back into the bedroom to get cigarettes. She removed the window screen and climbed into the bedroom through the window. Rosalinda was lying on the floor next to the bed and there was vomit on her clothing and on the floor. Karen opened the bedroom door so that Abel could help put Rosalinda back into bed. After putting Rosalinda back into bed fully clothed, Karen and Abel went to the store to buy cigarettes.

Karen and Abel returned to Karen's apartment. Around 5:00 a.m., Karen and Miguel went to the store to buy beer. When Karen left with Miguel, Abel was in the bathroom. Karen and Miguel returned after approximately 30 to 45 minutes because the store did not start selling beer until 6:00 a.m. They planned to wait in the car until that time. However, Miguel got out of the car to use the bathroom while Karen waited inside the car.

2

Miguel noticed the screen on a window in Karen's apartment had been removed. He heard Rosalinda and Abel speaking. At trial, Miguel recalled he heard Rosalinda say she respected Abel like a father and "'No, no, I don't want to.'" Miguel also previously reported to an officer that he heard Rosalinda say, "[N]o, no get off of me. I don't want to." After hearing Abel and Rosalinda, Miguel was concerned and returned to the car to tell Karen and ask her to go check on Rosalinda.

Karen went to her window and heard Rosalinda say, "'No, let me go, leave me alone, I don't want to.'" Karen lifted the window blinds and saw Rosalinda lying on the bed with her legs spread apart hanging off the bed and she was naked below the waist. Abel was standing between Rosalinda's legs with his pants unbuttoned and a "bit off." His pants were not all the way down, but were sitting somewhere between his waist and his knees. It appeared to Karen that something sexual was happening between Abel and Rosalinda. Karen yelled at Abel and asked, "What the fuck was he doing?" Abel responded by stating that nothing was happening.

Karen went inside the house as Abel was coming out of the bedroom. Abel was buttoning his pants. After an argument, Karen told Abel to leave.

When Rosalinda woke up around 9:00 a.m., she was wearing only her blouse and her bra which was unhooked. Her chest, vagina and anus hurt. The last thing she remembered was talking to one of Karen's friends at the party. She also vaguely recalled saying, "Leave me alone." When Rosalinda asked Karen what had happened, Karen said she saw Abel taking advantage of Rosalinda and that he was naked on top of her. Rosalinda was scared and could not believe her friend's father could do that to her.

3

Later that day, Rosalinda was examined by Claire Nelli, a forensic registered nurse. Rosalinda had a large red area on her vaginal wall and on the wall of her cervix, which indicated possible blunt force trauma. Also, her anus was red and swollen. Nelli saw a laceration on the outside of Rosalinda's anus and a second laceration inside the anus. The interior wound was still seeping blood and moisture at the time of the examination. According to Nelli, there was no way to determine what caused the anal wound. It may have been caused by something other than a penis, such as a finger. Although highly unlikely, it could have also been the result of "rough wiping."

Rosalinda also had petechia bruising around her breast, which was possibly caused by sucking or pinching. Nelli swabbed the bruised area and both nipples. An analysis of the swabs revealed Abel's DNA on both breasts. Abel's semen was not found inside Rosalinda's anus or vagina. However, a penis could have penetrated the vagina, anus and rectum without leaving semen behind.

Karen testified that she had a strained relationship with Abel. In 2005, Karen accused Abel of sexually abusing her. She later recanted the allegations and told a social worker that she made up the story because she was mad at her father.

*Defense*

Abel testified on his own behalf. He denied raping or sodomizing Rosalinda, or putting his mouth on her breasts. He explained that he may have touched Rosalinda when he was trying to pull her pants up and may have accidentally touched her breasts when he lifted her off the floor to put her back into bed. Abel also denied having his pants off and buttoning them as he left the bedroom. Instead, he stated he was adjusting his shirt.

4

DISCUSSION

I. *Sufficiency of the Evidence*

Abel argues there was insufficient evidence to support his sodomy conviction. Specifically, he contends there was no evidence to prove he penetrated Rosalinda's anus with his penis. We reject this argument.

In reviewing the sufficiency of the evidence to support a conviction, we determine "whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged." (*People v. Crittenden* (1994) 9 Cal.4th 83, 139, fn. 13.) Under such standard, we review the facts adduced at trial in the light most favorable to the judgment, drawing all inferences in support of the judgment to determine whether there is substantial direct or circumstantial evidence the defendant committed the charged crime. (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496.) The test is not whether the evidence proves guilt beyond a reasonable doubt, but whether substantial evidence, of credible and solid value, supports the jury's conclusions. (*People v. Mincey* (1992) 2 Cal.4th 408, 432.) " 'If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.' " (*People v. Love* (1960) 53 Cal.2d 843, 850–851.)

"Sodomy is sexual conduct consisting of contact between the penis of one person and the anus of another person. Any sexual penetration, however slight, is sufficient to

complete the crime of sodomy." (Pen. Code, § 286, subd. (a); undesignated statutory references are to this code.)

Here, there was sufficient evidence to support the jury's finding that Abel penetrated Rosalinda's anus with his penis. Specifically, Karen testified that she observed Abel standing between Rosalinda's legs with his pants lowered. It appeared to Karen that something sexual was happening between Abel and Rosalinda. When Karen went inside the house, Abel was buttoning his pants as he came out of the bedroom. Additionally, Rosalinda complained that her anus was sore and the forensic nurse stated it was red and swollen. The nurse also testified that Rosalinda had two lacerations on her anus, including an interior wound that was still seeping blood and moisture at the time of the examination. Based on this evidence, the jury could reasonably infer that Abel penetrated Rosalinda's anus with his penis. Although Abel contends the anal laceration could have been caused by something other than a penis, we will not disturb the jury's finding where it was supported by the evidence and inferences reasonably drawn therefrom. (*People v. Millwee* (1998) 18 Cal.4th 96, 132.)

## II. *Alleged Evidentiary Error*

Abel argues the court abused its discretion by allowing Rosalinda to testify regarding what Karen told her on the morning of the incident, namely that Abel took advantage of Rosalinda and was naked on top of her. Specifically, Abel contends the evidence should have been excluded pursuant to Evidence Code section 352 because it was more prejudicial than probative.

6

This statute provides, "[t]he court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "For this purpose, '"prejudicial" means uniquely inflammatory without regard to relevance.' [Citation.] 'Evidence is substantially more prejudicial than probative [citation] if . . . it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome" [citation].' [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 49.)

Here, defense counsel objected on hearsay grounds. The trial court overruled the objection and admitted the evidence for the limited purpose of explaining Rosalinda's later conduct of calling the police.

Even if Abel did not forfeit his Evidence Code section 352 claim by failing to object on that ground below (Evid. Code, § 353; *People v. Moore* (2011) 51 Cal.4th 1104, 1138) and assuming the trial court erred in admitting the evidence, we conclude admission of the challenged evidence was harmless. Review of a trial court's exercise of discretion under Evidence Code section 352 is based on the harmless error test set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. (See *People v. Alcala* (1992) 4 Cal.4th 742, 790–791.) The trial court's judgment may be overturned only if "it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error." (*People v. Watson*, *supra*, at p. 836.)

It is not reasonably probable that Abel would have obtained a more favorable result absent the assumed evidentiary error because there was other evidence that Abel took

7

advantage of Rosalinda and was naked on top of her. Specifically, Karen and Miguel testified that they heard Rosalinda protest by saying, "No" and "I don't want to." Karen also testified that she saw Rosalinda lying on the bed with her naked legs spread apart and Abel standing between Rosalinda's legs with his pants partially down. It appeared to Karen that something sexual was happening between Abel and Rosalinda.

Further, Rosalinda had a large red area on her vaginal wall and on the wall of her cervix, which indicated possible blunt force trauma, and her anus was red, swollen and had two lacerations. She also had petechia bruising on one breast and an analysis revealed Abel's DNA on both breasts.

Based on the foregoing, we conclude any prejudice to Abel from the assumed error was harmless.

### III. *New Trial Motion*

A. Background

Abel moved for a new trial based on newly discovered evidence. He supported his motion with a letter from Jon Lane, a defense investigator. In that letter, Lane explained he met with Karen after the trial and discussed the incident with her. According to Lane, Karen's sister assisted as an interpreter because Karen was not fluent in English. Karen recounted the events of the evening and told Lane that "[Abel] was standing with his pants open/un-buttoned, but still up with boxer shorts exposed underneath. He was not naked and his penis was not exposed. He was not touching Rosalinda." Karen also told Lane that she could not recall if Rosalinda's legs were together or spread apart.

8

Abel argued that Karen's statements to the investigator constituted "material differences" from her trial testimony and thus warranted a new trial. The trial court denied the motion, stating it "[did not] believe [the new evidence] rises to the level of constituting material, newly discovered evidence that justifies a new trial motion. . . . [I]t is at most kind of a variation on the same theme that was testified to at the trial."

B. Analysis

Abel argues the trial court erred in denying his motion for a new trial based on newly discovered evidence. Specifically, he contends a new trial was warranted because Karen's version of the events changed four times: (1) Rosalinda testified Karen told her on the morning of the crime that Abel was naked on top of Rosalinda; (2) at the preliminary hearing, Karen testified that Abel was standing between Rosalinda's legs and his pants and boxers were down above his knees; (3) at trial, Karen stated Abel was standing between Rosalinda's legs with his pants unbuttoned and a "bit off," sitting somewhere between his waist and his knees; and (4) after the trial, Karen told the defense investigator that Abel's pants were unbuttoned but still up with his boxer shorts exposed underneath and she could not tell if Rosalinda's legs were together or apart.

"'"The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears."' [Citations.] '"[I]n determining whether there has been a proper exercise of discretion on such motion, each case must be judged from its own factual background."'" (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

9

Although granting or denying a motion for new trial on the ground of newly discovered evidence is a matter that lies within the sound discretion of the trial court, in ruling on such a motion, the court must consider the following factors: (1) that the evidence, and not merely its materiality, is newly discovered; (2) that the evidence is not merely cumulative; (3) that it would render a different result probable on retrial of the cause; (4) that the party could not with reasonable diligence have discovered and produced it at trial; and (5) that these facts have been shown by the best evidence of which the case admits. (*People v. Delgado*, *supra*, 5 Cal.4th at p. 328.) A new trial motion based on newly discovered evidence must be supported by an affidavit of the witness through whom the evidence is to be given. (§ 1181, subd. 8; *People v. Ethridge* (1962) 204 Cal.App.2d 279, 282–283; *People v. Beeler* (1995) 9 Cal.4th 953, 1005.)

Here, Abel's motion was not supported by an affidavit from Karen and, as such, was legally insufficient. (§ 1181, subd. 8.) In fact, the motion was not supported by an affidavit at all. Instead, Abel relied on an unsigned letter from his defense investigator. On that basis alone, the trial court would have been justified in denying the motion. (*People v. Beeler*, *supra*, 9 Cal.4th at p. 1005.)

In any event, the evidence was not of sufficient strength to show a reasonable probability that a jury would render a different result on retrial. Karen's statements to the investigator were merely a variation of her testimony at the preliminary hearing and trial. Moreover, Karen's statements lacked credibility. Karen was consistent at the preliminary hearing and at trial by stating that Abel was standing between Rosalinda's legs with his pants and boxers partially down. Karen did not change her story until after Abel was

10

convicted. Even then, she told Lane that Abel's pants were unbuttoned and his boxer shorts were exposed. Given the strength of the other evidence in this case (see *ante*, part I), it is unlikely the jury would have reached a different result.

Lastly, Lane's letter recounting Karen's statements was unreliable. According to Lane, he needed the assistance of Karen's sister as an interpreter because Karen was not fluent in English. There is no indication as to whether the translation was accurate or reliable.

Based on the foregoing, we conclude the trial court acted well within its discretion in denying Abel's new trial motion.

IV. *Equal Protection*

Abel argues that imposition of mandatory sex offender registration on him for misdemeanor sexual battery violates his right to equal protection. We reject his argument.

The Fourteenth Amendment to the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." A similar requirement appears in the California Constitution, article I, section 7.

"'"The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]"'" (*People v. Jeha* (2010) 187 Cal.App.4th 1063, 1073 (*Jeha*), quoting *People v. McKee* (2010) 47 Cal.4th 1172, 1218–1219.)

Here, Abel was convicted of three offenses requiring him to register as a sex offender under section 290 (sodomy of an intoxicated person, assault with intent to commit rape or sodomy, and sexual battery). He contends the registration requirement for sexual battery violates his right to equal protection of the laws because he is similarly situated to offenders who commit the crimes of statutory rape, spousal rape where the victim is prevented from resisting by means of an intoxicating substance or is unconscious, kidnapping by force for marriage or sex, kidnapping for prostitution, selling victims into sexual slavery, forcing a wife into prostitution, and abusing a child with female genital mutilation.

Preliminarily, we point out that this is essentially a futile argument because regardless of the outcome, Abel is required to register as a sex offender for two other offenses. Abel asks this court to address an argument which provides him no meaningful relief. Although we find this a wasteful exercise, we address Abel's argument on the merits.

We conclude Abel's equal protection challenge to the registration requirement with respect to his sexual battery offense fails because he has not met the "'"'first prerequisite'"'" to a meritorious claim, namely "'"'that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'"'" (*Jeha*, *supra*, 187 Cal.App.4th at p. 1073.) "Misdemeanor sexual battery (in violation of § 243.4, subd. (e)) requires a showing that the defendant touched an intimate part of another person, the touching was against that person's will, and was done with specific intent to cause sexual arousal, gratification or abuse. [Citation.]" (*People v. King* (2010) 183 Cal.App.4th 1281, 1319.) In contrast, the other offenses Abel cited do not require the same specific sexual intent. (*People v. Cavallaro* (2009) 178 Cal.App.4th 103, 114 ["[A] higher mental state

12

require[ment] . . . is a distinction that is meaningful in deciding whether a person convicted under th[at] statute is similarly situated . . . ."].)

Further, several of the crimes Abel points to, including kidnapping by force for marriage or sex, kidnapping for prostitution, selling victims into sexual slavery, forcing a wife into prostitution, and abuse of a child with genital mutilation do not require any sexual touching of "an intimate part of another person." (*People v. King*, *supra*, 183 Cal.App.4th at p. 1319.) Those crimes do not necessarily have a sexual element and thus are not similarly situated to the offense of sexual battery.

Based on the foregoing, we conclude Abel has not met his threshold burden of showing "that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*Jeha*, *supra*, 187 Cal.App.4th at p. 1073.) Accordingly, his equal protection argument fails.

DISPOSITION

The judgment is affirmed.

McINTYRE, J.

WE CONCUR:

BENKE, Acting P. J.

HUFFMAN, J.

13