Filed 2/5/25  P. v. Ramos CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GERARDO CEJA RAMOS,<br><br>    Defendant and Appellant. | F086444<br><br>(Super. Ct. No. 22CR-03825)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Merced County.  Stephanie L. Jamieson, Judge.

Brad L. Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Jeffrey D. Firestone, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Gerardo Ceja Ramos grabbed S.K. and slapped her hard on the buttock as she walked through a parking garage to her car. A jury convicted defendant of misdemeanor sexual battery, and the court sentenced him to a six-month term in the county jail and ordered him to register as a sex offender for no less than 10 years. Defendant argues that the 10-year sex offender registration requirement violates his federal substantive due process rights because the requirement is arbitrary and not rationally related to the legitimate government purpose of protecting the public from recidivism.

Because defendant's case proceeded to trial on an amended misdemeanor complaint, we provided the parties with an opportunity to supplement their briefing and address whether jurisdiction for this appeal properly lies with the Merced Superior Court Appellate Division. Having reviewed that issue, we conclude that jurisdiction lies with this court, reject the due process challenge, and affirm the judgment.

## PROCEDURAL BACKGROUND

The District Attorney of Merced County filed a complaint charging defendant with felony sexual battery (Pen. Code,[1] § 243.4, subd. (a); count 1) and felony false imprisonment (§ 236; count 2).[2] At the preliminary hearing, the court declined the invitation to reduce the offenses to misdemeanors and held defendant to answer. The district attorney filed an information charging both crimes as felonies, but during defendant's arraignment, the court granted the prosecutor's oral motion to amend the information to reduce the sexual battery charge to a misdemeanor. Defendant pleaded not guilty. The information was not interlineated to reflect the amendment.

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Section 236 provides the definition of false imprisonment. Section 237 provides the punishment for false imprisonment as a misdemeanor. However, false imprisonment effected by violence, menace, fraud, and deceit is punished as a felony only. (See § 237.)

Prior to a scheduled trial date, defendant filed a motion pursuant to section 995 to dismiss the felony false imprisonment charge or reduce it to a misdemeanor. Over the prosecutor's opposition, the court found that violence had not been used to accomplish the false imprisonment and reduced the false imprisonment charge to a misdemeanor, although the information was not interlineated to reflect the court's decision. Because the case was trailing defendant's unrelated felony vandalism case, the court agreed to "keep" the case.

Five weeks later, during pretrial proceedings on May 3, 2023, the court and parties discussed the charging document to be read to the jury. The prosecutor stated that the information did not "accurately [reflect] the charges" as previously amended, and the court requested that an amended complaint be filed or available for the clerk to read to the jury. Defense counsel did not object and later requested that the jury be instructed as to misdemeanor false imprisonment and misdemeanor sexual battery. The district attorney thereafter filed an amended complaint charging defendant with misdemeanor sexual battery (§ 243.4, subd. (e)(1); count 1) and misdemeanor false imprisonment (§ 236; count 2) in accordance with the court's ruling on defendant's section 995 motion as to count 2 and previous order granting the prosecutor's motion to amend count 1. The court acknowledged receipt but did not arraign defendant on the amended complaint, nor did any party request it. The clerk read the amended complaint to the jury prior to opening statements and advised that defendant had pleaded not guilty to the charges.

A jury convicted defendant of count 1 on May 5, 2023, but acquitted him of count 2. The superior court sentenced defendant on May 26, 2023, to a term of six months in county jail, to be served concurrent to the four-year prison term it imposed in an unrelated criminal case. The court also ordered defendant to register for 10 years as a tier one sex offender (§§ 290, subd. (d)(1)(A), 290.006).

Defendant filed a timely notice of appeal on June 21, 2023.

3.

**FACTS**

On July 20, 2022, Sarah K. was leaving City Hall through the stairwell and saw defendant standing on the opposite side of the street as she walked down the stairs and exited the stairwell. She then crossed the street to the second floor of the parking garage where she had parked her car. While walking, defendant tightly grabbed Sarah's shoulder from behind with one hand. Sarah froze and then screamed. Sarah was afraid that defendant intended to rape her. Defendant slapped her left buttock hard with his open palm. Sarah estimated the pain she felt was a level six and lasted for an hour. Defendant released her, laughed, said he "felt like doing that," and then ran off.

Sarah sat in her car and contemplated whether to contact the police. Concluding that defendant had likely left the area, she drove from the parking garage but then saw defendant detained by police. She told the officers of defendant's actions. When officers questioned defendant, he first claimed that he had pushed Sarah because she was in his way and then "chuckled" when the officer confronted him with Sarah's account.

**DISCUSSION**

**I.      *Appellate jurisdiction for this appeal.***

Defendant's opening brief cites section 1237, subdivision (a) and California Rules of Court,[3] rule 8.304(a) as authority for this appeal. The People did not address this issue. We ordered the parties to file supplemental briefing addressing whether jurisdiction for this appeal lies with this court or the Merced Superior Court Appellate Division. Defendant argues that we have jurisdiction of the appeal, while the People disagree. We conclude that the case was filed as a "felony case" and remained so until its final disposition through sentencing. As such, we have jurisdiction to decide defendant's appeal.

---

[3]      References to rules are to the California Rules of Court.

## A. Applicable Law

We have appellate jurisdiction over appealable orders from "felony case[s]." (§ 1235, subd. (b); see Cal. Const., art. VI, § 11.) The appellate divisions of the superior courts, by contrast, have appellate jurisdiction over appealable orders from "misdemeanor case[s]." (§ 1466; see Cal. Const., art. VI, § 11.)

Section 691, subdivision (f) defines a " '[f]elony case' " as "a criminal action in which a felony is charged and includes a criminal action in which a misdemeanor or infraction is charged in conjunction with a felony." A " '[m]isdemeanor or infraction case' " refers to "a criminal action in which a misdemeanor or infraction is charged and does not include a criminal action in which a felony is charged in conjunction with a misdemeanor or infraction." (§ 691, subd. (g).)

Rule 8.304 also governs the filing of appeals in the Courts of Appeal. "(1) To appeal from a judgment or an appealable order of the superior court in a felony case … the defendant or the People must file a notice of appeal in that superior court." (Rule 8.304(a)(1).) "As used in (1), 'felony case' means any criminal action in which a felony is charged, regardless of the outcome. A felony is 'charged' when an information or indictment accusing the defendant of a felony is filed …." (Rule 8.304(a)(2).) "A felony case includes an action in which the defendant is charged with: [¶] (A) A felony and a misdemeanor or infraction, but is convicted of only the misdemeanor or infraction; [¶] (B) A felony, but is convicted of only a lesser offense; or [¶] (C) An offense filed as a felony but punishable as either a felony or a misdemeanor, and the offense is thereafter deemed a misdemeanor under Penal Code section 17[, subdivision ](b)." (Rule 8.304(a)(2)(A)–(C).)

The Advisory Committee comment to rule 8.304 explains that rule 8.304 "makes it clear that a 'felony case' is an action in which a felony is charged *regardless of the outcome of the action*. Thus the question whether to file a notice of appeal under this rule or under the rules governing appeals to the appellate division of the superior court

5.

(rule 8.800 et seq.) is answered simply by examining the accusatory pleading:  if that document charged the defendant with at least one count of felony (as defined in Penal Code, section 17[, subdivision](a)), the Court of Appeal has appellate jurisdiction and the appeal must be taken under this rule *even if the prosecution did not result in a punishment of imprisonment in a state prison*.  [¶]  It is settled case law that an appeal is taken to the Court of Appeal not only when the defendant is charged with and convicted of a felony, but also when the defendant is charged with both a felony and a misdemeanor (Pen. Code, § 691[, subd. ](f)) but is convicted of only the misdemeanor (e.g., *People v. Brown* (1970) 10 Cal.App.3d 169); when the defendant is charged with a felony but is convicted of only a lesser offense (Pen. Code, § 1159; e.g*., People v. Spreckels* (1954) 125 Cal.App.2d 507); and when the defendant is charged with an offense filed as a felony but punishable as either a felony or a misdemeanor, and the offense is thereafter deemed a misdemeanor under Penal Code section 17[, subdivision ](b) (e.g., *People v. Douglas* (1999) 20 Cal.4th 85; *People v. Clark* (1971) 17 Cal.App.3d 890).  [¶]  Trial court unification did not change this rule .…"  (Advisory Com. com., 23 pt. 4 West's Ann. Codes, Rules (2017 ed.) foll. rule 8.304, p. 7.)

Determining whether the Legislature intended its definition of "felony case" to include a case in which a felony and misdemeanor were initially charged but thereafter the felony was dismissed or eliminated by a superseding charging document or whether its definition applies to the original charging document is a question of law that we review de novo under well-settled standards of statutory interpretation.  (*People v. Lewis* (2021) 11 Cal.5th 952, 961.)  To determine the Legislature's intent and effectuate the law's purpose, we begin with the language of the statute itself, giving words their plain and commonsense meaning while also considering the framework of the entire statutory scheme and keeping in mind its nature and purpose.  (*Ibid.*)

If the words do not provide a reliable indicator of legislative intent, we may be able to resolve ambiguities " 'by examining the context in which the language appears

and adopting the construction which best serves to harmonize the statute internally and with related statutes.' " (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1126.) We do not interpret the statute so literally as to contravene the apparent legislative intent, " ' "and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed." ' " (*Ibid.*) However, if the statute is ambiguous, "we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy." (*Ibid.*)

**B.     Analysis**

Defendant essentially argues that this matter became a felony case, subject to our jurisdiction, when the prosecutor filed an information that included felony charges, regardless of the ultimate outcome of the felony charges, either by superior court dismissal or a superseding charging document. The People argue that because the prosecutor filed a subsequent misdemeanor complaint after the court granted defendant's section 995 motion that reduced the remaining felony charge to a misdemeanor, this is a misdemeanor case that must be appealed to the Merced Superior Court Appellate Division.

### *(1)     Jurisdiction*

Section 691, subdivision (f) defines "felony case," as relevant here, to include a criminal action where a felony is charged in conjunction with a misdemeanor or infraction. We note that the term "criminal action" is defined as "[t]he proceeding by which a party is charged with a public offense" and "brought to trial and punishment." (§ 683.) Even so, the definition of "felony case" does not address whether the nature of the action is established at its filing or changes depending upon subsequent procedural actions. If the former, then our jurisdiction is determined at the filing of the case, and we look to the original charging document. If the latter, then a court's dismissal of the felony charge or the filing of an amended charging document that fails to include a felony could change the nature of the action from a "felony case" to a "misdemeanor case."

Looking at the language of the statute itself and even considering the framework of the entire statutory scheme, we are unable to determine the Legislature's intent with regard to the definition of a felony case. (See *People v. Lewis, supra*, 11 Cal.5th at p. 961.) Therefore, we will consider legislative history and the statute's purpose. (See *People v. Gonzalez, supra*, 43 Cal.4th at p. 1126.)

a) Legislative history

Effective September 28, 1998, Senate Bill No. 2139 (1997–1998 Reg. Sess.) (Senate Bill No. 2139) amended section 691 by adding subdivisions (f) and (g) (Stats. 1998, ch. 931, § 354, p. 6572) and was intended as urgent legislation needed to implement necessary changes in the court rules and procedures in those counties which elected to operate a unified court system in accordance with "SCA 4" (Sen. Const. Amend. No. 4 (1995–1996 Reg. Sess.) res. ch. 36, pp. 8615–8621). (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 2139 (1997–1998 Reg. Sess.) June 9, 1998, [proposed amendment] p. 1 (Assembly Committee on Judiciary Analysis).) According to the legislative history, Senate Bill No. 2139 would specify the jurisdictional rules for handling appeals in a unified superior court, making those cases within the original jurisdiction of the superior court prior to unification appealable to the Courts of Appeal and those cases which would have been in the original jurisdiction of the municipal court absent unification appealable to the appellate department of the superior court. (Sen. Judiciary Com., Analysis of Sen. Bill No. 2139 (1997–1998 Reg. Sess.) as amended Apr. 2, 1998, par. 2 (Senate Judiciary Committee Analysis).) "The basic thrust of [Senate Bill No.] 2139 is to preserve the status quo through the unification process" to ensure that limited trial and appellate resources not be applied to smaller cases and avoid forum shopping or disparity of treatment based upon whether the courts in a particular county unified. (Assem. Com. on Judiciary Analysis, p. 2.)

The legislative history for Senate Bill No. 2139 also provides that, in anticipation of the unification of the municipal and superior courts, the Legislature commissioned the

California Law Revision Commission (Law Revision Commission) to review all statutes affected by unification and to identify needed revisions, assisted by a working group of the Administrative Office of the Courts. (Sen. Judiciary Com. Analysis, *supra*, at par. 1; Assem. Com. on Judiciary Analysis, *supra*, at p. 2.) The Legislature adopted the Law Revision Commission's proposed section 691, subdivisions (f) and (g) without substantive change. (Compare Trial Court Unification: Revision of Codes (July 1998) 28 Cal. Law Revision Com. Rep. (1998) p. 406 (Law Revision Commission Report) with § 691, subds. (f), (g).) " 'Explanatory comments by a law revision commission are persuasive evidence of the intent of the Legislature in subsequently enacting its recommendations into law.' [Citation.] 'This is particularly true where the statute proposed by the [Law Revision Commission] is adopted by the Legislature without any change whatsoever and where the [Law Revision Commission]'s comment is brief, because in such a situation there is ordinarily strong reason to believe that the legislators' votes were based in large measure upon the explanation of the [Law Revision Commission] proposing the bill.' " (*People v. Garfield* (1985) 40 Cal.3d 192, 199.)

The definitions of "felony case" and "misdemeanor case" in subdivisions (f) and (g) of section 691 were "intended generally to preserve existing procedures for criminal cases by replacing references to superior court criminal cases with references to felony cases, and by replacing references to municipal court criminal cases with references to misdemeanor and felony cases." (Law Revision. Com. Rep., *supra*, at pp. 66–67, 406.) The Law Revision Commission explained: "The statutory grant of jurisdiction [to the Courts of Appeal under the unification law] is also consistent with the intent of [Senate Constitutional Amendment No.] 4: to preserve the appellate jurisdiction of the [C]ourt of [A]ppeal in cases historically within the original jurisdiction of the superior court." (*Id.* at p. 73.) Article VI, section 11 of the California Constitution provides: "[C]ourts of [A]ppeal have appellate jurisdiction when superior courts have original jurisdiction in causes of a type within the appellate jurisdiction of the [C]ourts of [A]ppeal on June 30,

9.

1995, and in other causes prescribed by statute." Further, "[t]he proposed law would make clear that the appellate jurisdiction of the appellate division covers limited civil cases and misdemeanor and infraction cases—causes traditionally within the original jurisdiction of municipal courts—regardless of whether the courts in a county have unified." (Law Revision Com. Rep., at p. 74.) Thus, the law clarified that trial court unification—and the resulting elimination of the municipal court—did not change the court to which cases were to be appealed.

Prior to unification, jurisdiction of the Courts of Appeal was defined with reference to cases heard in the superior courts: "[C]ourts of [A]ppeal have appellate jurisdiction when superior courts have original jurisdiction and in other causes prescribed by statute," and superior courts had appellate jurisdiction in causes prescribed by statute that arise in municipal courts in their counties. (Former Cal. Const., art. VI, § 11, pars. 1, 2, amended by initiative, Gen. Elec. (Nov. 8, 1994), commonly known as Prop. 191; see *People v. Welch* (1971) 20 Cal.App.3d 997, 1000, fn. 6 [former § 1235 limits jurisdiction of Courts of Appeal to cases arising from the superior court].) The proposed changes to the affected codes were intended "to preserve the appellate jurisdiction of the court of appeal in cases historically within the original jurisdiction of the superior court." (Law Revision Com. Rep., *supra*, at p. 73.) As a consequence of the 1998 amendments to section 691 (and other related jurisdictional statutes), the Courts of Appeal have jurisdiction over any "felony case" in criminal matters (as they did before 1995) and, therefore, our analysis of that term must be necessarily informed by the applicable pre-1995 cases.

b)      Pre-1995 case law

Prior to its amendment in 1966, the California Constitution (former art. VI, § 5) provided: "The superior courts shall have original jurisdiction in all … criminal cases amounting to felony, and cases of misdemeanor not otherwise provided for …." Under that provision it was originally held that the superior court lacked jurisdiction to try a

misdemeanor count, whether or not it was joined with a felony count. (*People v. Rodriguez* (1962) 202 Cal.App.2d 191, 196–197, overruled in *Kellett v. Superior Court* (1966) 63 Cal.2d 822, 826, fn. 3 (*Kellett*).) In *Kellett*, the Supreme Court held that such a joinder pursuant to section 954 was not only permissible but, under most circumstances, necessary where the two offenses are joinable under the rules governing joinder in criminal cases. (*Kellett*, at pp. 827–828.) Where a defendant is charged with both a felony and a misdemeanor pursuant to section 954, the superior court has jurisdiction to hear the misdemeanor case. (*In re McKinney* (1968) 70 Cal.2d 8, 13.) Our Supreme Court described this an exception to the general rule of jurisdiction because it clashed with the legislative requirement in section 954. (*In re McKinney*, at p. 13.)

The question of the scope of jurisdiction over the misdemeanors joined with felonies after *Kellett, supra*, 63 Cal.2d 822 was first addressed in *People v. Brown, supra*, 10 Cal.App.3d 169 (*Brown*). Brown was tried on both felony and misdemeanor charges, and while the jury found her guilty as to the misdemeanor, it failed to reach a verdict as to the felony. (*Id.* at p. 173.) On appeal, Brown argued that the superior court lacked jurisdiction to sentence her on the misdemeanor charge in the absence of a felony conviction. (*Ibid.*) The court concluded that because the charges had been properly charged together pursuant to section 954 and the test for proper joinder of counts did not require conviction, "We think it clear the superior court's jurisdiction over the misdemeanor charge … was established when it was joined in an information with a felony, and when the evidence demonstrated the same act or course of conduct played a significant part in both offenses *charged*." (*Brown*, at p. 175) The court further explained that jurisdiction in this sense relates to the "fundamental power of the court to hear and determine the case before it," and "[o]nce a court acquires jurisdiction of a cause, it retains it until the matter is disposed of." (*Ibid.*)

The jurisdictional issues relating to the joinder of felony and misdemeanor charges were also addressed in *People v. Clark, supra*, 17 Cal.App.3d 890 (*Clark*). *Clark*

11.

addressed different but related jurisdictional issues in two unrelated cases. (*Id.* at p. 894.) In the first case, Clark was properly charged by information with felony grand theft and a misdemeanor violation of section 11482 of the Welfare and Institutions Code. (*Clark*, at p. 894.) However, while Clark's case was still pending, our Supreme Court later held that welfare fraud could not be prosecuted as a felony pursuant to section 487. (*Clark*, at p. 894; see *People v. Gilbert* (1969) 1 Cal.3d 475, 479–480.) The trial court then dismissed the felony charge on motion by the prosecution but denied Clark's motion to dismiss the misdemeanor violation for lack of subject matter jurisdiction. (*Clark*, at p. 894.) The trial court found Clark guilty of the remaining misdemeanor charge, suspended the proceedings, and placed her on probation. (*Ibid.*)

*Clark* reviewed the existing case authority: (1) the superior court has no jurisdiction to try a case on an accusatory pleading charging only misdemeanors (*In re Luna* (1927) 201 Cal. 405); (2) the superior court has jurisdiction for subsequent proceedings where the defendant is convicted of a lesser included misdemeanor offense but not the felony offense (*People v. Spreckels, supra*, 125 Cal.App.2d at pp. 512–513 (*Spreckels*)); (3) the superior court has jurisdiction to try a misdemeanor offense joined with a felony offense (*In re McKinney, supra*, 70 Cal.2d at p. 13); and (4) the superior court has jurisdiction of a misdemeanor joined with a felony even if the jury does not convict on the felony (*Brown, supra*, 10 Cal.App.3d at pp. 173–175). (*Clark, supra*, 17 Cal.App.3d at pp. 895–896.)

*Clark* also reviewed three other cases that, while addressing some procedural aspects of joining a felony with a misdemeanor, failed to address whether a superior court could proceed to trial when the felony count or counts had been eliminated before trial. (*Clark, supra*, 17 Cal.App.3d at p. 896, citing *Gomez v. Superior Court* (1958) 50 Cal.2d 640, 642, 653 [double jeopardy bars retrial of grand theft charge where conviction for lesser included misdemeanor offense reversed on appeal and transferring to justice court for disposition]; *People v. Hardin* (1967) 256 Cal.App.2d Supp. 954, 955–956; *Castro v.*

*Superior Court* (1970) 9 Cal.App.3d 675, 704–708.) While the Supreme Court in *Gomez* remanded the remaining misdemeanor count to the superior court with orders to transfer the case to the justice court, *Clark* noted that the case provided no discussion of whether transfer was required and the court and parties "seem[ed] to have assumed that, if only the misdemeanor count was triable, the superior court had lost power to try it." (*Clark*, at p. 897.)

   *Clark* concluded that the case had been commenced in a court having subject matter jurisdiction and the court continued to have jurisdiction even after dismissal of the felony. (*Clark, supra*, 17 Cal.App.3d at p. 897.) However, pursuant to section 1462.2, since the municipal court was the proper court for trial of a misdemeanor, the superior court could transfer the case upon request of the defendant. (*Clark*, at p. 897.) In finding that the superior court was not deprived of jurisdiction despite the dismissal of the felony charge, the court gave "full effect to the policy that a court having once acquired jurisdiction over a proceeding should conclude it." (*Ibid.*) Clark, however, had requested an absolute dismissal, which was properly denied. (*Id.* at p. 898.)

   *Suki, Inc. v. Superior Court* (1976) 60 Cal.App.3d 616 applied *Clark* in a case in which the superior court dismissed the felony count as barred by double jeopardy and ordered the case transferred for trial on the misdemeanor charges to the municipal court. (*Suki, Inc.*, at pp. 622, 631–632.) The People objected to the municipal court's jurisdiction to order to return property pursuant to section 1536, which allows for such a motion in the court where the property was returned or the court where the offense is triable. (*Suki, Inc.*, at pp. 623, 631.) In upholding the municipal court order, the appellate court held, "When the felony count of the indictment was dismissed leaving only misdemeanor counts, the superior court was empowered to divest itself of jurisdiction by transferring the case to the municipal court," which was a court in which the offense was triable. (*Id.* at p. 631; citing § 1462.2 & *Clark, supra*, 17 Cal.App.3d at pp. 897–898.)

13.

Similarly, *Clark* was again followed in *People v. Leney* (1989) 213 Cal.App.3d 265, a case in which Leney was charged with one felony count and three misdemeanors. (*Id.* at pp. 267–268.)  The prosecutor agreed to dismiss the felony and one misdemeanor in exchange for Leney's agreement to a court trial on the two remaining misdemeanors. (*Id.* at p. 628.)  In finding that the offenses were properly joined, the appellate court stated:  "[T]he superior court has jurisdiction over a misdemeanor which has been properly joined with a felony count.  [Citation.]  The superior court retains jurisdiction even if the felony count is eliminated before trial."  (*Ibid.*)

### c) Application to this case

The information filed in this case charged defendant with felony sexual battery (reduced to a misdemeanor during defendant's arraignment after the superior court granted the prosecution's oral motion to amend the information) and felony false imprisonment (reduced to a misdemeanor after the superior court granted defendant's section 995 motion) arising from a single incident in which he grabbed the victim and forced her to stop walking while he slapped her on the buttock.  The counts were properly joined pursuant to section 954 (see *Kellett, supra*, 63 Cal.2d at pp. 827–828) and the superior court had jurisdiction (see *In re McKinney, supra*, 70 Cal.2d at p. 13).  The superior court also had jurisdiction of the uncharged lesser included offense of misdemeanor false imprisonment.  (See *Spreckels, supra*, 125 Cal.App.2d at pp. 512–513.)  The superior court did not lose jurisdiction of the false imprisonment offense by reducing it from a felony to a misdemeanor.[4]  (See *Clark, supra*, 17 Cal.App.3d at p. 897.)

---

[4]    Defendant argues that the superior court was not authorized to reduce felony false imprisonment to misdemeanor false imprisonment, citing *People v. Superior Court (Feinstein)* (1994) 29 Cal.App.4th 323, 330–331.  That case, however, is inapposite as the magistrate in that case purported to reduce a felony offense to a misdemeanor pursuant to section 17, subdivision (b)(5) at the preliminary hearing, but that section only permitted the magistrate to reduce a "wobbler" to a misdemeanor.  (*Feinstein*, at pp. 328–330.)  False imprisonment effected

Unlike *Clark*, however, the court in defendant's case ordered that an amended complaint be filed, which was read to the jury at the commencement of trial. The prosecutor provided the court with an amended complaint that charged misdemeanor sexual battery (in accordance with the oral amendment made during the arraignment) and misdemeanor false imprisonment and did not charge felony false imprisonment or the prior felony conviction allegations.[5] The superior court had jurisdiction over the charges in the original information because they had been properly joined with a felony (see *Kellett, supra*, 63 Cal.2d at pp. 827–828; *In re McKinney, supra*, 70 Cal.2d at p. 13), and despite the reduction of the charges to misdemeanors (see *Clark, supra*, 17 Cal.App.3d at p. 897).[6]

The People argue that the amended complaint changed this case from a felony case to a misdemeanor case for purposes of appellate jurisdiction, citing *People v. Scott* (2013) 221 Cal.App.4th 525 (*Scott*).[7] Following a preliminary hearing, Scott was held to answer on one felony count. (*Scott*, at p. 527.) Eight days later, the prosecution filed an

by violence is a straight felony, not a "wobbler," and cannot be sentenced as a misdemeanor. (*Id.* at p. 330; see § 237.)

[5] Defendant was not arraigned on the amended complaint, which was drafted at the superior court's request in order for the clerk to read it to the jury. However, as we noted, defendant pleaded not guilty to the information, which included both charges alleged in the amended complaint (including misdemeanor false imprisonment, a lesser included offense of the felony false imprisonment). Therefore, the failure to require defendant to plead anew is at most an irregularity to which defendant did not object and resulted in no prejudice to defendant. (*In re Mitchell* (1961) 56 Cal.2d 667, 670–671, citing *People v. Agnew* (1952) 110 Cal.App.2d Supp. 837, 840–841.)

[6] This court would have had jurisdiction to review the trial court's decision to grant defendant's section 995 motion. (See *People v. Alice* (2007) 41 Cal.4th 668, 680 ["Beyond question, the People had the right to appeal the superior court's order dismissing the driving under the influence charge under Penal Code section 995."].)

[7] The Sixth District Court of Appeal has clarified its position that the "regardless of the outcome" test in rule 8.304 generally results in a bright line rule that the filing of an information or indictment or a complaint being certified to the superior court "governs appellate jurisdiction, except in cases like *Scott*, where the prosecution files an entirely new pleading after dismissing any and all felony counts." (*People v. Morales* (2014) 224 Cal.App.4th 1587, 1599.)

15.

information charging Scott with one felony and three misdemeanors. (*Ibid.*) *Scott* held that, under rule 8.304, at that point, the case became a felony case. (*Scott*, at pp. 529–530.) Four days after the information was filed, however, the prosecution moved to dismiss the felony count for insufficient evidence. (*Id.* at p. 527.) The court dismissed the felony, and Scott pleaded not guilty to the three misdemeanors. (*Ibid.*) The case was subsequently set for trial in the misdemeanor department. (*Id.* at pp. 528, 533, fn. 5.) On the first day of trial, the prosecution filed a " '[f]irst [a]mended' misdemeanor complaint," charging Scott with three misdemeanor offenses. (*Id.* at p. 528.) The jury found Scott guilty as charged, and Scott filed a " '[m]isdemeanor' " notice of appeal and other appellate notices using the forms for misdemeanor appeals, but the appeal went to the Sixth Appellate District. (*Id.* at pp. 528, 533.)

*Scott* "questioned whether appellate jurisdiction was vested in [the Court of Appeal] or the appellate division of the superior court" and asked the parties to brief the issue. (*Scott, supra*, 221 Cal.App.4th at p. 528.) After reviewing section 691, rule 8.304, the Advisory Committee comment to rule 8.304, and the cases cited in the comment, *Scott* concluded that the appellate division of the superior court had appellate jurisdiction and transferred the case to that court. (*Scott*, at pp. 528–532, 534.)

In reaching this conclusion, *Scott* examined each of the cases cited in the Advisory Committee comment to rule 8.304. (*Scott, supra*, 221 Cal.App.4th at pp. 530–532; see *Brown, supra*, 10 Cal.App.3d at p. 175 [superior court's jurisdiction was established when the misdemeanor was joined in an information with the felony and continued until disposition of the case]; *Spreckels, supra*, 125 Cal.App.2d at pp. 512–513 [where jury fails to convict on felony, superior court still has jurisdiction over conviction of lesser included offense].) Although not a case addressing subject matter jurisdiction, the Advisory Committee comment to rule 8.304 cited *People v. Douglas, supra*, 20 Cal.4th 85 (*Douglas*) and *Clark, supra*, 17 Cal.App.3d 890 as examples of cases where a felony case retains its nature even when the felony offense results in a misdemeanor disposition

16.

pursuant to section 17, subdivision (b).[8] *Clark* addressed separate jurisdictional issues raised in two cases (*Clark*, at p. 894), the first of which we discussed *ante*, in part I.B.(1)(b). The second case at issue in *Clark* concerned defendant Tait and involved a felony violation of section 11503 of the Health and Safety Code. (*Clark*, at p. 894.) During arraignment, the superior court unlawfully amended the information to reduce the charge to a misdemeanor pursuant to section 17, subdivision (b) and certified it back to municipal court. (*Clark*, at pp. 894–895, 898.) *Clark* recognized that, pursuant to section 17 and "[b]y long established law, when filed as a felony, it remains a felony unless and until a misdemeanor sentence is pronounced," and the superior court lacked authority to reduce the charge at arraignment. (*Clark*, at pp. 894–895.) The court issued a peremptory writ of mandate directing the superior court to vacate its order purporting to amend the information and certifying the case back to the municipal court and, thereafter, to proceed with the case as a felony. (*Id.* at p. 899.)

*Scott* noted that in each of the aforementioned cases, with the exception of *Clark*, the felony count was either tried or the defendant pleaded guilty to the felony counts. (*Scott, supra*, 221 Cal.App.4th at p. 532.) In comparison, Scott's only felony count had been dismissed before trial, and Scott was charged by an " 'amended' complaint with only three misdemeanors." (*Ibid.*) The court explained, "At this point, Scott stood charged with misdemeanors and no felony counts. It is axiomatic that for all intents and purposes this is a case in which Scott was not charged with a felony. Based on … a close reading of the Advisory Committee comment to rule 8.304 [and the cases cited therein], we are convinced that the 'regardless of the outcome' language in rule 8.304 does not

---

[8] In *Douglas*, Douglas was charged with felony counts of obtaining by a false declaration more than $400 in health care benefits for which he was ineligible (Welf. & Inst. Code, § 14014) and grand theft from the state (§ 487, subd. (a)). (*Douglas, supra*, 20 Cal.4th at p. 88.) Douglas pleaded no contest to the felonies based on representations from the trial court that it would treat both offenses as misdemeanors pursuant to section 17 and would place him on probation for three years with no additional jail time. (*Douglas*, at p. 88.) The issues on appeal did not involve a discussion of subject matter jurisdiction.

17.

extend to cases wherein the felony count is dismissed entirely, because in this situation there is no 'prosecution.' "[9] (*Scott*, at p. 532, italics omitted.) The court clarified that when a pleading is amended, the amended pleading supersedes the original pleading, which is "set aside and abandoned." (*Id.* at p. 533.) Therefore, in looking at the most recently filed and operative pleading, no felony was charged. Having determined that the effective pleading charged Scott with only three misdemeanors, the court concluded that the appeal was not properly before it and transferred the matter to the appellate division of the superior court. (*Id.* at p. 534.)

We could find no case authority to support *Scott*'s apparent conclusion that subsequent criminal charging documents deprive this court of subject matter jurisdiction prior to disposition of the entire action. Additionally, it is not accurate to characterize the original information as abandoned for, so long as it has not been dismissed, the original information serves to toll the applicable statute of limitations. (See *In re McCartney* (1966) 64 Cal.2d 830, 831–832 [permitting the defendant acquitted of murder to be retried on lesser included offense of manslaughter on original or amended information because original murder information charged within statute of limitations]; *Harris v. Superior Court* (1988) 201 Cal.App.3d 624, 627–628.) *Scott*'s conclusion in this regard is dependent upon its conclusion that a dismissal of the felony after the original information is filed changes the character of the case from felony to misdemeanor and fails to account for *Clark*'s contrary holding. (See *Scott, supra*, 221 Cal.App.4th at pp. 533–534; *Clark, supra*, 17 Cal.App.3d at p. 894.)

We also question whether federal law treats the original information as "set aside and abandoned" before trial commences. (*Scott, supra*, 221 Cal.App.4th at p. 533.) *Scott*

---

[9]     The word "prosecution" apparently refers to that part of the Advisory Committee comment to rule 8.304 that provides if the accusatory document includes a felony, the appeal is to the court of appeals "*even if the prosecution did not result in a punishment of imprisonment in a state prison*" (Advisory Com. com., 23 pt. 4 West's Ann. Codes, Rules, *supra*, foll. rule 8.304, p. 7).

relied upon *People v. Mack* (1961) 197 Cal.App.2d 574, 578–579, which quoted *Armstrong v. United States* (9th Cir. 1926) 16 F.2d 62, 64 for the proposition that an original information is abandoned and set aside after the filing of an amended information. Armstrong was charged by original and superseding informations with several counts relating to the unlawful manufacture, sale, and possession of liquor but, tried and convicted on the latter, Armstrong challenged both informations on appeal. (*Ibid.*) The court held that Armstrong could not challenge the original information after being tried on the superseding information. (*Ibid.*) As explained in an earlier decision, two informations or indictments for the same offense may be pending at the same time until the prosecution elects one of them for trial. (*Thompson v. United States* (9th Cir. 1913) 202 F. 401, 404–405.) As explained more recently, "An original indictment remains pending until it is dismissed or until double jeopardy or due process would forbid prosecution under it." (*United States v. Pacheco* (9th Cir. 1990) 912 F.2d 297, 305, citing *United States v. Grady* (2d Cir. 1976) 544 F.2d 598, 602, fn. 4.)

Ultimately, however, we are unable to reconcile *Scott* with the Legislature's intent and the Law Revision Commission's goal "to preserve the appellate jurisdiction of the court of appeal in cases historically within the original jurisdiction of the superior court" (Law Revision Com. Rep., *supra*, at p. 73) when defining "felony case." In reaching its decision, *Scott* ignored *Clark*'s holding that dismissal of the only felony charge in an information does not divest the superior court of jurisdiction to dispose of the joined misdemeanors and failed to address either *Suki, Inc. v. Superior Court* or *People v. Leney*, which followed *Clark*.

We also disagree with *Scott* ascribing importance to the fact that "[t]he superior court recognized that this was a misdemeanor case and set the trial in a misdemeanor department" or that "Scott's trial counsel recognized that this was a misdemeanor case and filed a misdemeanor notice of appeal," as well as other forms used in misdemeanor appeals. (*Scott, supra*, 221 Cal.App.4th at p. 533.) The court erred in relying upon these

19.

facts to determine subject matter jurisdiction because the parties cannot confer subject matter jurisdiction to a court. (See *People v. Simon* (2001) 25 Cal.4th 1082, 1096–1097; *Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 533 [a party's conduct cannot confer subject matter jurisdiction upon a court].)

*Scott*'s ultimate decision that jurisdiction lay with the appellate division of the superior court is supported by *Clark*. *Clark* concluded that the case had been commenced in a court having subject matter jurisdiction, the court continued to have jurisdiction even after dismissal of the felony, but section 1462.2 permitted the court to divest itself of jurisdiction and transfer the case to the municipal court. (*Clark, supra*, 17 Cal.App.3d at p. 897.) At the time *Clark* was decided and in 1995, Courts of Appeal had jurisdiction over cases decided in superior courts and superior courts had jurisdiction over appeals from municipal court cases. (Former §§ 1235 [as amended by Stats. 1951, ch. 1674, § 132, p. 3855] 1466 [as amended by Stats.1968, ch. 315, p. 685].) Therefore, if a court transferred a case to the municipal department, as occurred in *Scott*, the appeal should have been taken to the superior court.

In the instant case, the superior court did not transfer the case to the misdemeanor department and, therefore, this case remained a felony case and within our jurisdiction.

### *(2)     Transfer of Jurisdiction*

Defendant argues that even if jurisdiction lies with the Merced Superior Court Appellate Division, we should transfer jurisdiction to this court pursuant to section 1471, which provides for such transfer as to "any case on appeal to a superior court in its district" as provided by the rules of the Judicial Council and where necessary "to secure uniformity of decision or to settle important questions of law" (§ 1471). We do not address this issue in light of our conclusion that jurisdiction is properly with this court.[10]

---

[10]     We note, however, that section 1471 is not applicable because the appeal was filed directly to this court and was not first appealed to the Merced Superior Court Appellate Division. Rules 8.1000–8.1018 govern the transfer of cases from the appellate division to the Courts of

20.

## II.    *Substantive due process.*

Defendant argues that section 290, subdivision (d)(1)(A)'s 10-year minimum registration period, applied to him as a tier one misdemeanor sex offender, violates his substantive due process rights under the Fourteenth Amendment to the United States Constitution.  Defendant supports his argument with an additional claim that section 290 implicates "significant and important human rights," disproportionality affects transients and African Americans, and therefore requires us to review its legality using the "rational basis with a bite" test, a heightened rational basis test.  Defendant further argues that previous court decisions upholding the constitutionality of section 290 do not prevent this court from reevaluating its legality because factual developments since those previous decisions "demonstrate that for low-level misdemeanor offenders the mandatory and indiscriminate imposition of a minimum ten-year registration period is irrational because it does not prevent recidivism, [one of the stated goals of the legislation], and is an arbitrary period of time."

### A.    Background as to California's Registry for Sex Offenders

California has had some form of sex offender registration requirement since 1947. (See former § 290, as enacted by Stats.1947, ch. 1124, § 1, p. 2562.)  Former section 290, subdivision (b)(1) provided for lifetime registration of every person convicted of an enumerated offense or, since 1995, of any offense not specifically enumerated if the court

---

Appeal.  Transfer is authorized if the appellate division certifies transfer either on its own motion or on a party's application, a party petitions for transfer in this court, or upon our own motion. (Rule 8.1002.)  No party may petition this court for transfer of the case until after the appellate division has denied an application for transfer first filed in that court and only after the appellate division has issued a decision.  (Rule 8.1006(a), (b)(1).)  While this court may order transfer on our own motion, we must do so within 30 days of the final decision of the appellate division decision.  (Rule 8.1008(a)(1)(B).)  In this case, because the appeal was not filed first in the appellate division, no party first applied to the appellate division for a transfer and there is no appellate division decision.  Had we not found jurisdiction proper here, the case could be transferred to the Merced County Superior Court Appellate Division pursuant to Government Code section 68915.

found that the individual committed the offense as a result of sexual compulsion or for purposes of sexual gratification. (Former § 290, subd. (a)(2)(E); Stats. 1994, ch. 867, § 2.7, pp. 4389–4390; see *People v. Castellanos* (1999) 21 Cal.4th 785, 790 & fn. 2 (*Castellanos*).) Since 1944, section 290 has required registration by any individual convicted of violating section 243.4. (Former § 290, subd. (a)(2)(A), as amended by Stats. 1994, ch. 867, § 2.7, pp. 4389–4390.)

In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program (Megan's Law)[11] that conditioned certain federal law enforcement funding on each states' adoption of some variation of Megan's Law for registration of sex offenders and notification to the community of sex offenders living in their midst. (See 42 U.S.C. former § 14071 et seq., repealed by the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. 109–248, § 129(a) (July 27, 2006) 120 Stat. 590; *Smith, supra*, 538 U.S. at pp. 89–90.) California enacted its Megan's law in 1996 and made several findings and declarations in an uncodified preamble to the statute, including a finding that sex offenders "pose a high risk of engaging in further offenses after release" and "protection of the public from these offenders is a paramount public interest." (Stats. 1996, ch. 908, § 1(a), p. 5105.) The Legislature further found that the public has a "compelling and necessary … interest" in obtaining information about released sex offenders so they can "adequately protect themselves and their children from these persons" and, therefore, released sex offenders "have a reduced expectation of privacy." (Stats. 1996, ch. 908, § 1(b)–(c), p. 5105.) Recognizing that section 290 required registration of sex offenders, the Legislature balanced the due process and other rights of "serious" and "high-risk offenders" and

---

[11] In 1994, a seven-year-old New Jersey girl named Megan Kanka was abducted, raped, and murdered by a neighbor. Megan's family did not know the neighbor had previously been convicted of sex offenses involving children. (*Smith v. Doe* (2003) 538 U.S. 84, 89–90 (*Smith*) [upholding Alaska's Megan's Law against claim that it imposed retroactive punishment in violation of the ex post facto clause of the United States Constitution].)

concluded that release of information to the public regarding these offenders would "further the primary government interest of protecting vulnerable populations from potential harm." (Stats. 1996, ch. 908, § 1(d), p. 5105; see §§ 290.45, 290.46.)

The United States enacted the Sex Offender Registration and Notification Act (SORNA) (Pub.L. No. 109–248, §§ 101–155 (July 27, 2006) 120 Stat. 590) as a section[12] of the Adam Walsh Child Protection and Safety Act of 2006 (Pub.L. No. 109–248 (July 27, 2006) 120 Stat. 587). SORNA requires each state to maintain a jurisdiction-wide sex offender registry (34 U.S.C. § 20912), to adopt minimum registration and notification requirements, and to supply such information to the national registry (34 U.S.C. §§ 20913, 20914). SORNA defines "sex offense," in part, as "a criminal offense that has an element involving a sexual act or sexual contact with another." (34 U.S.C. § 20911(1), (5)(A)(i).) To encourage its implementation, SORNA reduces federal law enforcement funds to jurisdictions that fail to adopt it. (34 U.S.C. § 20927.) Sex offenses are assigned to one of three tiers, with specified offenses in tier III characterized as the most severe felony sex offenses, followed by other felony sex offenses in tier II, and with all remaining crimes, including all misdemeanors, in tier I. (34 U.S.C. § 20911(2)–(4).) The registration period is 15 years, 25 years, and life for each of tiers I through III, respectively. (34 U.S.C. § 20915(a).)

"[Managing and supervising sex offenders] is one of the most difficult challenges facing government policymakers today. [¶] In response to this challenge, the Legislature in 2006 created the California Sex Offender Management Board (CASOMB) to analyze current practices and recommend improvements. (Pen. Code, § 9001.) One of CASOMB's foundational principles was that sex offender management strategies should be based on reliable information and empirical research concerning the efficacy and cost

---

[12] Originally codified at 42 United States Code section 16901 et seq., SORNA was transferred to 34 United States Code section 20901 et seq. effective September 1, 2017. We cite to the current code sections.

23.

effectiveness of different approaches.  (CASOMB, Recommendations Rep. (Jan. 2010) p. 12;[13] see § 9001, subd. (i).)  Following a series of public hearings and meetings ([former] § 9002, subd. (b)),[14] CASOMB issued a report recommending best practices in a variety of areas relating to the management of sex offenders .…"  (*People v. Garcia* (2017) 2 Cal.5th 792, 797, fn. omitted; see *id.* at p. 798 [addressing Fifth Amendment privilege against self-incrimination challenge to mandatory treatment and waiver of psychotherapist-patient challenge].)

In 2017, the Legislature enacted Senate Bill No. 384 (2017–2018 Reg. Sess.) (Senate Bill No. 384).  Effective January 1, 2018, Senate Bill No. 384 restructured the sex offender registration requirement and established three tiers of registration for sex offenders, primarily based on the offense of conviction, for periods of at least 10 years (tier one), at least 20 years (tier two), and life (tier three).  (Stats. 2017, ch. 541, § 2.5, pp. 4078–4079; see § 290, subd. (d).)  Senate Bill No. 384 also established procedures for a person to seek termination from the sex offender registry if the person meets certain criteria, including completion of the mandated minimum registration period. (Stats. 2017, ch. 541, § 12, pp. 4096–4098; see § 290.5, subds. (a), (b).)

The legislative reports describing Senate Bill No. 384 include information from CASOMB's Recommendations Report and a second report[15] from 2014 that also

---

**13**    CASOMB, Recommendations Report (Jan. 2010) <https://casomb.org/docs/ CASOMB%20Report%20Jan%202010_Final%20Report.pdf> [as of Feb. 5, 2025], archived at <https://perma.cc/4VD6-SYW4> (Recommendations Report).

**14**    As originally enacted, CASOMB was tasked with "conduct[ing] a thorough assessment of current management practices for adult sex offenders" (former § 9002, subd. (a)(1)) and submitting a completed plan with recommendations to improve such practices to the Legislature and Governor by January 1, 2010 (former § 9002, subd. (a)(2)).  (Stats. 2006, ch. 338, § 1, pp. 2671–2672.)

**15**    CASOMB, A Better Path to Community Safety, Sex Offender Registration in California "Tiering Background Paper" (2014), p. 7 <https://casomb.org/docs/ Tiering%20Background%20Paper%20FINAL%20FINAL%204-2-14.pdf> [as of Feb. 5, 2025], archived at <https://perma.cc/3QEZ-GAPT> (Tiering Paper).

recommends reforms to California's sex offender registration. The legislative reports describe that the existing registry system required lifetime registration and "allow[ed] the public to see a majority of offenders" but failed to provide law enforcement and the public a way in which to differentiate between higher and lower risk sex offenders. (Sen. Com. on Pub. Safety, Analysis of Sen. Bill No. 421 (2017–2018 Reg. Sess.) as amended Apr. 17, 2017, p. 8 (Senate Committee Analysis);[16] Sen. Floor Analyses, *supra*, at p. 5; see Assem. Com. On Public Safety, Rep. on Sen. Bill No. 421 (2017–2018 Reg. Sess.) as amended May 26, 2017, p. 11 (Assembly Committee Analysis) ["allows the public to be aware of the majority of sex offenders"].) Both the Senate and Assembly Committees on Public Safety discuss CASOMB's Recommendations Report's conclusion that the duration of registration be changed to a minimum of 10 years to life, dependent upon the seriousness of the offender's criminal history, empirically assessed risk level, and other factors. (Sen. Com. Analysis, at p. 8; Sen. Floor Analyses, at pp. 5–6; Assem. Com. Analysis, at p. 11; see CASOMB, Recommendations Rep., *supra*, at p. 96.)

The Assembly Committee Analysis includes the bill author's statement in describing the result of treating all sex offenders the same—"[w]hether you're a sexual predator or an 80-year-old gay man caught having sex in a park in 1958, … you're on that registry for life"—and his belief that the amendments would improve the registry's use as an investigative tool by reducing the overall number of registered offenders and categorizing the offenders by the seriousness of their crimes and risk level for reoffense. (Assem. Com. Analysis, *supra*, at pp. 8–9.) The restructuring would also assist the public

---

[16] Senate Bill No. 384 originated as Senate Bill No. 421, which had passed the Senate Floor on May 31, 2017. (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 384 (2017–2018 Reg. Sess.) as amended Sept. 8, 2017, p. 1 (Senate Floor Analyses).) The contents of Senate Bill No. 421 were inserted into Senate Bill No. 384 by assembly amendments that also deleted the contents of Senate Bill No. 384. (Sen. Floor Analyses, at pp. 1–2.) The amendments "slightly narrowed [Senate Bill No.] 421 by moving a number of offenses involving children or force from the 20-year registration requirement to the lifetime registration requirement." (*Id.* at p. 2.)

to ascertain which offenders are truly dangerous. (Assem. Com. Analysis, at p. 11; Sen. Com. Analysis, *supra*, at p. 8.) The reports include a statement from the Los Angeles County District Attorney's Office, a cosponsor of the bill, that registering offenders in tiers would allow law enforcement to concentrate efforts on high-risk and violent offenders. (Sen. Com. Analysis, at p. 11; Sen. Floor Analyses, *supra*, at pp. 7–8; Assem. Com. Analysis, at p. 15.) The statement also describes an expert's conclusion that not all sex offenders reoffend during their entire lifetime, the risk decreases the longer the offender remains offense-free, and "[a]fter ten years a sex offender classified as low risk poses no more risk of recidivism than do individuals who have never been arrested for a sex-related offense but have been arrested for some other crime." (Sen. Com. Analysis, at p. 11; Assem. Com. Analysis, at p. 15.)

The Assembly Committee Analysis refers to CASOMB's Tiering Paper in 2014, including the conclusion that research on sex offender risk and recidivism does not justify lifetime registration and recommendation that the list of registrable sex offenses would remain the same but the length and level of registration would be changed to match the risk level to the offender. (Assem. Com. Analysis, *supra*, at p. 12.)

## B.    Applicable Law

The due process clause of the Fifth Amendment to the United States Constitution protects individual liberty against "certain government actions regardless of the fairness of the procedures used to implement them." (*Daniels v. Williams* (1986) 474 U.S. 327, 331.) A regulation that infringes on a fundamental constitutional right will be struck down as violative of substantive due process under the Fourteenth Amendment unless it is narrowly tailored to serve a compelling state interest. (*Reno v. Flores* (1993) 507 U.S. 292, 302.) Regulations that do not interfere with fundamental rights are presumed to be constitutional and will be upheld if rationally related to a legitimate state interest. (*Id.* at p. 306; *Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 440.)

Fundamental rights are rights deeply rooted in this nation's history and tradition. (*Washington v. Glucksberg* (1997) 521 U.S. 702, 719–721.) Those rights are few and protect against governmental interference with personal decisions, such as the rights to marry, have children, direct the education and upbringing of one's children, marital privacy, use contraception, bodily integrity, and refuse unwanted lifesaving medical treatment. (*Id.* at p. 720.)

Under rational basis review, so long as there is a rational relationship between the statute and some legitimate governmental purpose, there is no constitutional violation. (*Heller v. Doe* (1993) 509 U.S. 312, 320.) " 'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve.' " (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881 (*Johnson*).) In determining if there is a rational basis, " 'a court may engage in " 'rational speculation' " as to the justifications for the legislative choice,' " and such speculation need not have any empirical basis or foundation in the record. (*Ibid.*) Therefore, "[t]o mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity." (*Ibid.*)

Due process affords individuals a baseline of substantive and procedural rights, while equal protection safeguards against the arbitrary denial of benefits to a certain defined class of individuals, even when the due process clause does not require that such benefits be offered. (*People v. McKee* (2010) 47 Cal.4th 1172, 1207 (*McKee*).) However, rational basis review based on an equal protection argument essentially duplicates an argument based on due process. (*Chapman v. United States* (1991) 500 U.S. 453, 465.) Therefore, if a statute is upheld as rational for purposes of equal protection, then it does not violate substantive due process.[17]

---

[17] The reverse is not necessarily true, for a statute upheld on due process grounds could still violate the equal protection clause because equal protection safeguards against the arbitrary denial of benefits to a certain defined class of individuals, even when the due process clause does

27.

**C.    Prior Court Decisions Have Upheld the Constitutionality of Section 290 and Sex Offender Registration**

Our Supreme Court has rejected various constitutional objections to sex offender registration.  (See *Johnson, supra*, 60 Cal.4th at pp. 874–875 [applying rational basis analysis to reject equal protection challenge to section 290, which imposed discretionary sex offender registration for offense of unlawful sexual intercourse with a minor (§§ 261.5, 290.006) but mandatory registration for crimes involving other types of sexual activity with a minor (§ 290, subds. (b), (c))]; *In re Alva* (2004) 33 Cal.4th 254, 292 [holding mandatory sex offender registration for a misdemeanor was not punishment for purposes of either the Eighth Amendment to the United States Constitution or article I, section 17 of the California Constitution and overruling *In re Reed* (1983) 33 Cal.3d 914]; *Castellanos, supra*, 21 Cal.4th at pp. 790, 796 [rejecting argument that section 290 was a punitive statute subject to ex post facto limitations].)

" 'As [the California Supreme Court] has consistently reiterated:  "The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future." ' "  (*In re Alva, supra*, 33 Cal.4th at p. 264; see *Castellanos, supra*, 21 Cal.4th at p. 790.)  In rejecting Alva's argument that registration for an individual convicted of a misdemeanor was cruel and unusual punishment, the Supreme Court found that section 290's provisions are not excessive and punitive even though they applied "mandatory registration to a wide range of sex-related crimes, without closely assessing the danger posed by each individual offense or offender" and "ma[d]e the registration requirement lifelong."  (*In re Alva*, at p. 279.)

---

not require that such benefits be offered.  (See *McKee, supra*, 47 Cal.4th at p. 1207 [when certain due process protections are guaranteed by statute, even if not constitutionally required, the denial of those protections to one group must be reasonably justified in order to pass muster under the equal protection clause].)

Based on the general danger of recidivism of sex offenders and the relatively minor burden of registration, "the Legislature may adopt a rule of general application for this class of offenders, and may guard against the demonstrated long-term risk of reoffense by imposing a permanent obligation on persons convicted of such crimes. [Citation.] The means chosen to achieve the regulatory goal are therefore reasonable." (*Id.* at pp. 279–280; see *id.* at p. 292, fn. 21.)

Our Supreme Court recognized that the statute is "intended to promote the ' "state interest in controlling crime and preventing recidivism in sex offenders" ' " and " 'to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deems them likely to commit similar offenses in the future' " and "perceives that sex offenders pose a 'continuing threat to society' [citation] and require constant vigilance." (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 [addressing whether failure to register was a continuing offense and violated ex post facto application].)

Our Supreme Court addressed an equal protection challenge to former section 290, which allowed for discretionary sex offender registration for those convicted of unlawful sexual intercourse with a minor (§§ 261.5, 290.006) but imposed mandatory registration for those convicted of crimes involving other types of sexual activity with a minor (former § 290, subds. (b), (c)). (*Johnson, supra*, 60 Cal.4th at p. 874.) *Johnson* recognized that sex offenders were not a suspect class and registration did not impinge on a fundamental right. (*Id.* at p. 881.) Therefore, it reviewed the statute to determine whether any reasonable state of facts could provide a rational basis for treating the two classes of offenders differently as opposed to a strict scrutiny review. (*Ibid.*)

In rejecting the equal protection challenge, *Johnson* overruled *People v. Hofsheier* (2006) 37 Cal.4th 1185 (*Hofsheier*), which found requiring mandatory registration for those convicted of nonforcible oral copulation with a minor while allowing discretionary registration for those convicted of unlawful sexual intercourse with a minor violated

29.

equal protection principles. (*Johnson, supra*, 60 Cal.4th at p. 883.) "In light of the legitimate purposes of sex offender registration, and the plausible and actual legislative concerns …, it cannot be said that the differentiated treatment of section 261.5 and section 288a offenders 'so lack[s] rationality' that it constitutes 'a constitutionally impermissible denial of equal protection.' " (*Id.* at p. 887.)

In addressing an equal protection challenge to the Sexually Violent Predators Act (Welf. & Inst. Code, § 6600 et seq.), our Supreme Court applied strict scrutiny review because McKee's liberty was at stake in a noncriminal proceeding and remanded for the People to carry its burden of demonstrating why sexually violent predators, but not any other ex-felons subject to civil commitment, such as mentally disordered offenders, were subject to indefinite commitment. (*McKee, supra*, 47 Cal.4th at pp. 1184.) In so doing, the court "emphasize[d] that our holding … does not mean that statutes pertaining to sexual offenders in general must be subject to heightened scrutiny. The lifetime registration requirements imposed by Penal Code section 290, for example, do not involve the loss of liberty. [Citation.] Such regulatory statutes not involving affirmative disability or restraint, are subject to rational basis review, and the Legislature will be given wide latitude to decide who should be subject to registration requirements."[18] (*McKee*, at p. 1211, fn. 14.)

One of our sister courts previously rejected a substantive due process challenge to section 290. (*People v. Jeha* (2010) 187 Cal.App.4th 1063, 1080 (*Jeha*).) Jeha argued that both his equal protection and substantive due process rights were violated when he was ordered to register as a sex offender for life after conviction for sexual penetration of an unconscious person (§ 289, subd. (d)). (*Jeha*, at pp. 1068, 1073.) The court rejected

---

[18] The registration requirement itself has been described as a nonpunitive civil mechanism to protect the public from danger and not punishment for a crime. (*Smith, supra*, 538 U.S. at pp. 93, 96, 105–106 [holding Alaska's sex offender registration requirement not punishment under ex post facto prohibition]; see *People v. Mosley* (2015) 60 Cal.4th 1044, 1050.)

Jeha's argument that a convicted sex offender has a right to privacy "that the Legislature may not infringe upon by enacting a sex offender registration requirement." (*Id.* at pp. 1078, 1080.) "As a convicted felon, [Jeha] has a diminished expectation of privacy in his identity," and restrictions on privacy following a criminal conviction are not subject to strict scrutiny review. (*Id.* at p. 1074.) Recognizing that courts should be reluctant to expand the concept of substantive due process (*id.* at p. 1079), the court concluded that a post-conviction registration requirement for enumerated sex offenses does not infringe on any rights " 'identified as so deeply rooted in our history and traditions, or so fundamental to our concept of constitutionally ordered liberty, that they are protected by the Fourteenth Amendment' " (*id.* at p. 1080, citing *Washington v. Glucksberg, supra*, 521 U.S. at p. 727; cf. also *Doe v. Tandeske* (9th Cir. 2004) 361 F.3d 594, 596–597 [rejecting substantive due process challenge to Alaska's sex offender registration statutes because convicted sex offenders do not have a fundamental right to be free from the registration and notification requirements and such statutes serve the legitimate nonpunitive purpose of public safety]).

*Jeha* concluded that Jeha's substantive due process rights were not violated by section 290's requirement that he register as a sex offender and that California enacted section 290 for the rational purpose to assure that sex offenders would be readily available for police surveillance because they were likely to commit similar sex offenses in the future and, in later years, to notify the public of the existence and location of these offenders so that they can take protective measures. (*Jeha, supra*, 187 Cal.App.4th at p. 1080.)

### D. Analysis

Defendant recognizes that California law has upheld former section 290 as rationally related to a legitimate legislative purpose but argues for several reasons that we are not bound by these decisions and that section 290, subdivision (d)(1)(A)'s 10-year minimum registration period, applied to him as a tier one misdemeanor sex offender,

31.

violates his substantive due process rights under the Fourteenth Amendment to the United States Constitution.  We disagree.

### (1)	Forfeiture

As a preliminary matter, defendant acknowledges that he never challenged the superior court's order that he register as a sex offender in the superior court but argues that he is presenting a "pure question of law" to attack section 290 in order to avoid forfeiture.  The People have not responded to defendant's forfeiture argument.  A respondent's failure to address an argument raised by an appellant may, under some circumstances, be interpreted as a concession.  (See *People v. Bouzas* (1991) 53 Cal.3d 467, 480 [stating that the People "apparently concede" a point made by the defendant to which they did not respond, either in briefing or in oral argument].)

However, we are not required to interpret the failure to respond to an argument as a concession or a forfeiture.  In *People v. Hill* (1992) 3 Cal.4th 959, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, footnote 13, the Supreme Court "decline[d] to find a [forfeiture] based on nothing more than respondent's failure to respond to [Hill]'s … argument, which was itself raised for the first time on appeal.  Such a rule would require a party to respond to his opponent's every argument, subargument, and allegation, no matter how meritless or briefly made."  (*Hill*, at p. 995, fn. 3; see *Griffin v. The Haunted Hotel, Inc.* (2015) 242 Cal.App.4th 490, 504–505 [a complete failure to address an argument does not compel the court to treat the failure as a concession that the argument has merit].)

Because the parties have had a fair opportunity to address the issue, we are "undoubtedly at liberty to decide a case upon any points that its proper disposition may seem to require, whether taken by counsel or not."  (*Hibernia Sav. and Loan Soc. v. Farnham* (1908) 153 Cal. 578, 584.)  Therefore, we exercise our discretion to address the issue.  (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [recognizing the court's discretion whether or not to address an issue that was not properly preserved].)

Ordinarily, a defendant who does not raise a claim in the trial court forfeits the right to assert the claim on appeal. (*In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.) An exception to the rule, however, allows consideration of a defendant's assertion that a statute is facially unconstitutional as a purely legal issue that does not require review of the trial record. (*Id.* at p. 889; see *id.* at p. 887 [limiting application of exception to those claims that do not require examining factual findings in record or remanding to trial court for further findings]; *People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347, fn. 9 ["Notwithstanding this rule of forfeiture, courts generally consider constitutional challenges to penal statutes for the first time on appeal where, as here, the arguments are legal, *based on undisputed evidence*, and center on review of abstract and generalized legal concepts." (Italics added.)].)

Accordingly, we will consider only defendant's facial challenge to the constitutionality of section 290 insofar as the argument does not call upon us to review disputed evidence. However, several of defendant's arguments in support of his constitutional challenge do rely on facts outside the trial record, and we find such arguments forfeited as discussed below.

a)  Burdens of registration

Defendant supports his substantive due process claim with an additional argument that section 290 may not implicate "fundamental rights" but does implicate "significant and important human rights" and disproportionality affects transients and African Americans such that review should be heightened using the "rational basis with a bite" test described in *United States v. Wilde* (N.D.Cal. 2014) 74 F.Supp.3d 1092 (*Wilde*).**19**

---

**19**     In *Wilde*, the court discussed "rational basis with a bite" (also referred to as "active rational basis"), a heightened standard of rational basis analysis. (*Wilde, supra*, 74 F.Supp.3d at p. 1096 & fn. 3 ["the rational basis 'with a bite' standard is less deferential to the legislative enactment, and a challenged law will be struck down if the court determines that it is in fact arbitrary, irrational, and/or unreasonable"].) This alternative rational basis test is argued to have been used in several United States Supreme Court cases (*id.* at p. 1096), although those cases never explicitly created such a test or acknowledged use of a test other than rational basis and

Citing *Hofsheier, supra*, 37 Cal.4th at page 1197, overruled on other grounds by *Johnson, supra*, 60 Cal.4th at page 888, defendant argues that the Supreme Court recognized that those convicted of registerable crimes are subjected to "onerous burdens that affect critical and important aspects of their lives such as housing and employment."[20]  Defendant generally alleges that section 290's requirement that sex offenders register (1) limits their access to education because they are required to register with campus police (§ 290.01), employment because they must disclose their status to their employer and are restricted from certain jobs (§ 290.95), and personal health decisions because they must disclose to a community care facility or long-term health care facility (Health & Saf. Code, §§ 1522.01, 1502, 1312); (2) impacts their right to association because they are prohibited from having a roommate who is another registrant (§ 3003.5) and domestic travel by deterring intrastate travel because they must register with every new county or city (§ 290.011); and (3) disproportionately affects the transient population and African Americans.

Section 290's registration requirement does not "on its face" establish sex offenders as a whole are unduly burdened by registration in the affected areas.  Though

reached their conclusions only after finding by conventional rational basis analysis that no conceivable legitimate state interest supported the classification at issue.  (See *Romer v. Evans* (1996) 517 U.S. 620, 635; *Cleburne v. Cleburne Living Center, Inc.*, *supra*, 473 U.S. at pp. 448–450; *U.S. Dept. of Agriculture v. Moreno* (1973) 413 U.S. 528, 534–538.)  *Wilde* found that the heightened standard of review was applied in those cases only if the legislative classification was, in fact, based upon an animus or desire to harm a particular group.  (*Wilde*, at p. 1097.)

Given the factual nature of defendant's argument and his failure to raise it in the trial court, we need not reach the issue of whether the courts apply a different test ("rational basis with a bite") where rights are "significant and important human rights" but not fundamental.

[20]    To the extent defendant is suggesting that *Hofsheier, supra*, 37 Cal.4th 1185 concluded section 290 violated equal protection by applying a heightened standard of review (more than rational basis but less than strict scrutiny) in recognition of the burdens resulting from registration, *Johnson* rejected *Hofsheier*'s rational basis analysis.  (*Johnson, supra*, 60 Cal.4th at p. 882.)  Defendant fails to cite any California case that has applied a different test to section 290, even though registration and its consequences for offenders have existed since 1947.

defendant does not so concede, his challenge is essentially an "as-applied" argument that registration may impact these areas of a sex offender's life and violate a constitutional right. (*In re Taylor* (2015) 60 Cal.4th 1019, 1033, 1034, 1039 [addressing "as-applied" challenge to § 3003.5, subd. (b) parole residency restrictions based on evidence adduced at an eight-day hearing that conditions excluded parolees from available housing in area, hindered employment and health treatment, and resulted in increased homelessness].) " 'A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual.' " (*Id.* at p. 1038, fn. 9.) An "as-applied" challenge contemplates an analysis of facts and circumstances in a particular case. (*Id.* at p. 1039; see *In re E.J.* (2010) 47 Cal.4th 1258, 1283 [parolees' challenges to § 3003.5 as infringing on various state and federal rights to privacy, property, and intrastate travel required establishment of a factual basis to support claims and conflicting exhibits in traverse required hearing in trial court].) Therefore, defendant's claim is not a purely legal issue.

Defendant's argument as to the disparate impact of sex offender registration on transient offenders and African Americans is also an "as-applied" challenge. To support his argument, defendant asked us to take judicial notice of facts outside the record, CASOMB's 2019 report, titled "Homelessness and Transient Status Among Registered Sex Offenders in California."[21]

---

[21]    CASOMB, Homelessness and Transient Status Among Registered Sex Offenders in California (Aug. 2019) <https://casomb.org/pdf/ Homelessness_and_Transient_Status_among_Registered_Sex_Offenders_in_California_2019_d ocx.pdf> [as of Feb. 5, 2025], archived at <https://perma.cc/63JQ-NPJS>. Defendant's request for judicial notice included this report as attachment D. We denied that request on September 13, 2024, because " ' "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court" absent exceptional circumstances.' " (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1106; see *Turrieta v. Lyft, Inc.* (2024) 16 Cal.5th 664, 698, fn. 14 [recognizing the general rule that an appellate court is not the forum in which to develop an additional factual record].) Furthermore, we cannot take judicial notice of the truth of the facts contained in the report. (*Turrieta*, at p. 698, fn. 14, quoting *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063, overruled on other grounds by *In re Tobacco Cases II* (2007) 41 Cal.4th

Defendant failed to make this factual argument challenging the constitutionality of section 290 in the trial court.  Therefore, because defendant's argument is not a purely legal issue and requires a consideration of facts not before this court, we conclude defendant has forfeited this argument.

b)      Changed circumstances

Defendant further argues that previous court decisions upholding the constitutionality of section 290 do not prevent this court from reevaluating its legality because factual developments since those previous decisions "demonstrate that for low-level misdemeanor offenders the mandatory and indiscriminate imposition of a minimum ten-year registration period is irrational because it does not prevent recidivism, [one of the stated goals of the legislation,] and is an arbitrary period of time."

The United States Supreme Court recognized that under rational basis review, "the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist." (*United States v. Carolene Products Co.* (1938) 304 U.S. 144, 153.)  Our Supreme Court has commented, "The notion that a court may invalidate legislation that it finds, after a trial, to have failed to live up to expectations, is indeed novel," and explained the general assumption that "only the legislative body that enacted the statute may exercise a power of repeal if that statute fails to meet legislative expectations." (*Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 963–964.)  "That is not to say that a change in conditions may never justify the constitutional invalidation of a once valid law.  But the circumstances for such invalidation are quite narrow." (*Id.* at p. 973.)  A quintessential example is presented by *Skalko v. City of Sunnyvale* (1939) 14 Cal.2d 213, where changed conditions rendered the application of a zoning ordinance to a particular piece of

1257, 1262; *People v. Castillo* (2010) 49 Cal.4th 145, 157.)  If not true, then the report does not support defendant's argument and is not relevant or material to the issues. (Evid. Code, §§ 350, 450, 451.)

36.

property arbitrary and irrational as distinguished from Santa Monica Beach, Ltd.'s claim that the legislation failed to accomplish its objectives. (*Santa Monica Beach, Ltd.*, at pp. 973–974, 969.)

Without deciding whether a defendant may challenge the constitutionality of a once valid statute due to changed circumstances, such a claim necessarily relies upon more than just the text of the statute. In this case, defendant claims that recent research and opinion show that sex offender registration is not needed to reduce recidivism (which he claims is already low) and does not increase public safety, and the amendments to section 290 failed to reduce the size of the registry. To prove changed circumstances have rendered the law unconstitutional, defendant asked us to take judicial notice of three reports by CASOMB,[22] prepared after section 290 was amended in 2017: (A) Proposed Amendments to Tiered Registration (2023);[23] (B) Year End Report 2022;[24] and (C) Annual Report 2021.[25] The factual nature of the argument is evident in defendant's reliance on CASOMB's reports to prove current recidivism rates, without which defendant cannot prove changed circumstances.

Defendant failed to make this factual argument challenging the constitutionality of section 290 in the trial court. Therefore, because defendant's argument is not purely a legal issue and requires a consideration of facts not before this court, we conclude defendant has forfeited this argument.

---

[22] Defendant's request for judicial notice included these three reports as attachments A through C, respectively. We denied this request on September 13, 2024. (See *ante*, fn. 21.)

[23] CASOMB, Proposed Amendments to Sex Offender Tiered Registration (2023) <https://casomb.org/pdf/Proposed_Amendments_to_Tiers.pdf> [as of Feb. 5, 2025], archived at <https://perma.cc/UVX7-XPAA>.

[24] CASOMB, Year End Report 2022 (2023) <https://casomb.org/pdf/2022_Year_End_Report.pdf> [as of Feb. 5, 2025], archived at <https://perma.cc/ M2GJ-V5EK>.

[25] CASOMB, Annual Report 2021 (Feb. 2022) <https://casomb.org/docs/2021_CASOMB_Annual_Report.pdf> [as of Feb. 5, 2025], archived at <https://perma.cc/S534-VFYL>.

c)      Low-risk sex offender recidivism rates

Defendant argues section 290's requirement of mandatory registration for offenders convicted of misdemeanor sex offenses was arbitrary when enacted based on information contained within CASOMB's Tiering Paper (submitted in 2014.)  The Tiering Paper recommended a tiered system of registration that limited the duration of registration based upon the category of offenses, but did not change the sex offenses that mandated registration, and recommended tier one be created for misdemeanors and other offenses that were not included in tiers two and three.  The Tiering Paper also described several studies, one by Karl Hanson, who had prepared a graph that showed a low-risk sex offender's recidivism rate was less than that of any other felon at the time of release.

Defendant requested that we take judicial notice of the entire report, not just the excerpts included in the Legislature's analyses reports, to support his argument that requiring registration for low-risk offenders was arbitrary as such offenders were no more likely to reoffend with a sex crime than any other offender.[26]

Defendant's reliance upon facts outside the record demonstrates that his argument is not purely a legal issue, and therefore, he has forfeited this argument.

### (2)      Defendant's "facial" challenge to section 290

As we discussed, our Supreme Court previously found that section 290's purpose is intended to promote the state interest in controlling crime and to facilitate police surveillance of sex offenders because the Legislature deems sex offenders likely to commit similar crimes in the future, posing a continuing threat to society.  (*Wright v. Superior Court, supra*, 15 Cal.4th at p. 527.)  In examining the 2017 amendments to section 290, we are mindful that the Legislature's underlying rationale need not be empirically substantiated or actually articulated, and the court may engage in rational

---

[26]      We denied defendant's request for judicial notice on September 13, 2024.  (See *ante*, fn. 21.)

speculation to justify the legislative choice even if the basis for speculation is not found in the record. (See *Johnson, supra*, 60 Cal.4th at p. 881.)

Defendant argues that the facts of sex offender recidivism have changed since section 290 was originally enacted. This may be true, but such information is not found in the legislative history (the only evidence we may consider for legislative intent in light of defendant's failure to raise this issue in the trial court).[27] Although the Recommendations Report and Tiering Paper reported the recidivism research upon which defendant relies, the legislative history did not include a discussion of all the research and described CASOMB's recommendation to reduce the duration of registration (but not the offenses or offenders subject to registration) based on research that demonstrated time reduces the risk of reoffense. The Legislature could have reasonably concluded that research did not support additional changes to section 290 (such as eliminating low-risk sex offenders or misdemeanor sex offenses from registration requirements). (See Assem. Com. Analysis, *supra*, at p. 11, citing CASOMB, Recommendations Rep., *supra*, at pp. 51, 56.)[28] Furthermore, the legislative reports describe that "[a]fter ten years a sex offender classified as low risk poses no more risk of recidivism than do individuals" arrested for some other crime. (Sen. Com. Analysis, *supra*, at p. 11.) This information supports a minimum 10-year registration period for low-risk offenders.

---

[27] The reports of legislative committees and commissions are part of a statute's legislative history and may be considered when construing legislative intent. (*Hutnick v. United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7.) "[I]t is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it." (*Ibid.*; see *Walker v. Superior Court* (1988) 47 Cal.3d 112, 122 [legislative materials not expressing collegial view of Legislature significant "insofar as their contents do not contradict the plain language of the statute"].)

[28] We note that CASOMB's recommendations to amend section 290 are found at page 96 of the Recommendations Report.

The Legislature may also have been mindful that the recidivism studies are based upon reported crimes, but only approximately 30 percent of sexual assaults are reported to police.[29] (*People v. Garcia, supra*, 2 Cal.5th at p. 796.)  Therefore, recidivism studies may not reflect the actual risk of reoffense, requiring caution before removing certain sex offenders from registration requirements.[30]

Additionally, any changes in recidivism risk would not refute the legitimate public safety interest in monitoring sex-offender presence in the community and assisting law enforcement in solving crimes.  (*American Civil Liberties Union of Nevada v. Masto* (9th Cir. 2012) 670 F.3d 1046, 1057.)  Because of the devasting impart that sex crimes can have on their victims, even comparatively low recidivism rates could be considered still unacceptably high and that efforts to reduce them even further are deserving of considerable investment of efforts, resources, and funding.[31]  (Cf. *People v. McKee* (2012) 207 Cal.App.4th 1325, 1343–1344 [substantial evidence supports a reasonable

---

[29]    The Tiering Report, had we granted judicial notice, would not have assisted defendant regarding recidivism rates.  The report acknowledges the difficulty in ascertaining accurate recidivism rates due to the number of sex offenses never reported to police.  An offender may create another sex crime that is not reported or may have committed other sex crimes that were not reported.  (Tiering Paper, *supra*, at p. 5.)  The report concludes that in light of matters still not known or are beginning to become known, "it seems best to accept the findings of the numerous large-scale studies that have been done while remaining open to the possibility that new knowledge may change the picture."  (*Ibid.*)

[30]    Recognizing that researchers agree that recidivism rates are not true offense rates (due to the surreptitious nature of sex crimes and the underreporting), one United States Department of Justice report describes divergent viewpoints as to "the propensity of sex offenders to reoffend over the life course and whether it is valid to characterize sex offender recidivism rates as low or high are examples of key issues that are subject to divergent viewpoints." (U.S. Department of Justice, Office of Justice Programs, Sex Offender Management Assessment and Planning Initiative (Mar. 2017) p. 108 <https://smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/somapi_full_report.pdf> [as of Feb. 5, 2025], archived at <https://perma.cc/K5PB-F52S>.)

[31]    (See, e.g., CASOMB, An Assessment of Current Management Practices of Adult Sex Offenders in California (Jan. 2008) p. 71 [sex offenders who commit another crime are more likely to commit a sex offense than other type of offenders] <https://casomb.org/docs/SOMBReport1.pdf> [as of Feb. 5, 2025], archived at <https://perma.cc/H5QL-J322>.)

perception by a legislative body that the harm caused by child sexual abuse and adult sexual assault is, in general, a greater harm than the harm caused by other offenses and is therefore deserving of more protection].)

Defendant sweepingly argues that section 290 was amended to remove low-level offenders who "flood" the registry. However, a fair reading of the legislative history, as we described above, explains that lifetime registration fails to provide law enforcement and the public a way in which to *differentiate* the higher and lower risk sex offenders. (Sen. Com. Analysis, *supra*, at p. 8.) By creating tiers for different sex offenses and placing offenders with high Static-99R scores in the highest tier, the Legislature created a mechanism for distinguishing the risk levels of the offenders registered. While the author of Senate Bill No. 384 (originally Sen. Bill No. 421, see *ante*, fn. 16) criticized the registry as flooded with low-risk offenders, his example was an 80-year-old man arrested in a park in 1958 that was required to register for life. (Assem. Com. Analysis, *supra*, at p. 8.) The author's comment, even if attributable to the Legislature as a whole, does not support defendant's conclusion that Senate Bill No. 384 intended to remove all low-risk sex offenders from the registration requirement. The cosponsor's comment that "[a]fter ten years a sex offender classified as low risk poses no more risk of recidivism than do individuals" who have committed some other crime is inconsistent with defendant's argument. (Sen. Com. Analysis, *supra*, at p. 11.) Given the explanation of the cosponsor and author, the Legislature could have reasonably believed that the usefulness of the registry would be improved by using durational limitations to both differentiate offenders by risk and remove registrants whose lowered risk has been demonstrated by having been crime-free for longer than the new duration requirements.

Finally, the Legislature may have factored in the requirements of SORNA and access to federal funding in creating a tiered system which includes all sex offenses regardless of the risk level. SORNA requires registration for all those convicted of offenses having the element of a sexual act or sexual contact with another and assigns

41.

misdemeanor offenses to tier I.[32]  (34 U.S.C. §§ 20911(1) & 5(A)(i), 20915(a).)  The registration period for tier I is 15 years.  (34 U.S.C. § 20915(a); see Assem. Com. Analysis, *supra*, at p. 14 [describing SORNA's tier requirements].)

We do not second guess the wisdom, fairness, or logic of the legislation. (*Johnson, supra*, 60 Cal.4th at p. 881.)  In light of the several justifications for the Legislature's choice to adjust the duration of registration rather than change the sex offenses or risk level of offenders subject to that registration, defendant has failed to " ' "negative every conceivable basis" ' " that might support the legislation.  (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

HILL, P. J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.

---

[32]    By amending section 290 to provide for a minimum 10-year registration period so long as the offender did not reoffend, the Legislature complied with SORNA's 15-year requirement for tier I offenders because SORNA permits an offender to freed from registration after 10 years with no new offenses.  (34 U.S.C. § 20915(a)(1), (b)(2)(A), (b)(3)(A).)